## BRASHER v. CHRISTOPHE.

A reservation to the mortgagor of chattels of the right to sell the mortgaged property renders such mortgage void *ab initio* as to creditors and incumbrancers.

*Error to District Court, Arapahoe County.*

THE facts are stated in the opinion.

Mr. H. C. DILLON, for plaintiff in error.

Messrs. BROWNE and PUTNAM, for defendant in error.

MACON, C.    The facts of this case are: In February, 1880, Christophe was keeping a boarding-house or tavern called the "Balcom House," in Denver, holding a lease on the premises from Hallack Bros., and on the 19th of that month assigned said lease, and sold the furniture in the house to James Bell and Alexander Lewis, for $2,500, $1,500 of which was paid down, and the notes of Bell and Lewis for $1,000 were given, to secure which, the latter executed to Christophe a chattel mortgage upon the same furniture they had bought of him, in which they reserved the power to sell and dispose of the mortgaged property in this form: "It is expressly understood and agreed by the party of the second part that the parties of the first part shall have the privilege of disposing of such furniture and chattels conveyed by this chattel mortgage as they shall see fit, for the purpose of purchasing other and better furniture and fittings to put in the aforesaid premises."    Afterwards, and before the maturity of any of the notes given to Christophe, Bell and Lewis executed four other chattel mortgages, the first to Brasher Bros., the second to Richmond Bros. & Farnsworth, the third to Richmond & Farnsworth, and the fourth to Fishel, Kohn & Wise, to secure an indebtedness in the aggregate to these several firms of about $3,600.    Soon after the 19th of February, and before any

of the last four mentioned mortgages were executed, Bell and Lewis had sold a large part of the furniture bought of Christophe and included in his mortgage, and replaced it with other articles of furniture, but how much in value, and what particular articles of the old furniture remained in the house when the last four mortgages, or any of them, were executed, is not shown with any degree of certainty; though the jury on the trial found as a fact that on the 5th of May, 1881, there remained in the house of such old furniture about $1,000 in value. On the 5th of May, 1881, the mortgagees, in the last four mortgages, foreclosed them by seizing and selling the property described therein, leaving nothing for Christophe. For this Christophe brought an action of trover against Brasher Bros. and Bell and Lewis. In this complaint is set out the mortgage in its legal effect, and also the property described therein; the fact of taking and conversion by the defendants, and the value of the property. The record shows that, to the original complaint, Bell and Lewis filed a demurrer, and that afterwards an amended complaint was filed, after which Bell and Lewis made no further defense, and the case went against them by default. Brasher Bros. filed their answer, denying the validity of the alleged mortgage to Christophe; denied the identity of the goods described in the complaint with those mortgaged in the last four mortgages; and admitted the seizure and conversion of all the property, furniture and fittings in the said Balcom House, then called and known as "The Turf Exchange."

The pleadings present two issues: *First*, the validity of the alleged mortgage to Christophe; and, *second*, the identity of the chattels described in the alleged mortgage to Christophe with those taken and converted by Brasher Bros. The case was tried to a jury, who rendered a verdict for plaintiffs in the sum of $1,334. Defendants moved for a new trial on the ground of error in law in the trial; that the verdict was contrary to the law and

evidence; because the damages awarded by the jury were excessive; because of newly-discovered evidence since the trial, and for that the court erred in entering judgment on the verdict, pending notice of a motion for a new trial. This motion was overruled, to which defendants excepted, and prayed an appeal, which was denied by the court, and to which an exception was reserved. Defendants are in this court on a writ of error, and have assigned twelve errors as ground for reversal of the judgment below, but abandoned the twelfth assignment. In the trial, Christophe introduced his mortgage in evidence over the objection of defendants, and defendants offered the last four mortgages, which the court admitted, but limited their effect as evidence, and required defendants to show that they were executed to secure money due for better furniture and fittings for this Turf Ex-- change, holding that for any other purpose the mortgages should be deferred to that of the plaintiff. On the conclusion of the evidence, the court instructed the jury as follows:

"*Gentlemen of the Jury:* The first, and substantial, and material issue in this case for you to determine from the evidence, is whether the defendants, commonly spoken of as Brasher Bros., being B. P. Brasher and L. B. Brasher, wrongfully took and converted to their own use certain property mentioned in the plaintiff's amended complaint, and which is referred to in this chattel mortgage, and contained in this schedule, and if you shall find that they did, then to find the value of such goods and chattels which you shall find they wrongfully converted. The case, to a certain extent, so far as the documentary portion here and the legality of these documents is concerned, is uncontradicted. On the 19th of February, 1881, it appears in evidence, without contradiction, that the plaintiff made a sale of certain goods and chattels in the Balcom House, in this city, to Bell and Lewis, for a certain sum in cash, and took a mortgage back for

the sum of $1,000, three notes amounting in the aggregate to $1,000; and the mortgage upon the goods and chattels in said Balcom House to secure the payment of those notes. In that chattel mortgage is contained this clause: 'It is expressly understood and agreed by the party of the second part' (that is the plaintiff, Seraphin Christophe) 'that the parties of the first part' (this is Bell and Lewis) 'shall have the privilege of disposing of such furniture and chattels, conveyed by this chattel mortgage, as they shall see fit, for the purpose of purchasing other and better furniture and fittings to put in the aforesaid premises.' It further appears that subsequently, and before the maturity of any of these notes, Bell and Lewis gave four other certain chattel mortgages to secure claims held against them by Brasher Bros., by Richmond & Farnsworth, by Richmond Bros. & Farnsworth, and by Fishel, Kohn & Wise, and gave a mortgage on certain other property of the defendants, Bell and Lewis, said property in those four other certain mortgages being described as being in the same house; and it is for you to say, from the evidence, whether the property described in those four other certain mortgages, given by Bell and Lewis, is the same identical property as the property described in the plaintiff's mortgage from Bell and Lewis. As to that you must depend on the evidence for your guidance, and not necessarily upon the fact that the property may be described in the same language or the same general terms. As to the identity, then, of the property described in the first mortgage, and in these four other certain mortgages, you are to determine from the evidence whether it is the same property. If you shall find that it is the same property, or that any portion of it is the same property, then the court charges you, as a matter of law under this case, under the evidence in this case, that the security of these four parties, or four partnerships, by their four chattel mortgages, is not good against the first mortgage, unless these four

mortgages, or some one or more of them, was given for the purpose of purchasing other and better furniture and fittings to put in the aforesaid premises. The plaintiff gave to the defendants, Bell and Lewis, the privilege of disposing of the property as they should see fit; and the court holds that they might mortgage it, if the purpose of their mortgaging it was to secure other and better furniture and fixtures to put in the same hotel; but it could not be mortgaged for any other purpose; that is, the same property described in the plaintiff's mortgage could not be mortgaged for any other purpose than for the express purpose specified here, and be a good mortgage to defeat the first mortgage; but, if mortgaged for the purpose of getting other furniture and fittings for that hotel, for that express purpose in good faith, then the second mortgagee's security would prevail over the first mortgagee's security, if you shall find that fact from the evidence.

"Now, it further appears from the evidence, without contradiction, that some time about the 1st of May, 1881, the defendants the Brasher Bros., acting in concert with the other mortgagees under these subsequent mortgages, went and took possession of certain property in the Balcom House, which has been since known as 'The Turf Exchange,' as appears from the evidence under their several mortgages, and sold and disposed of the property which they took possession of. But it is for you to say from the evidence whether in taking possession of certain property in the Balcom House, or Turf Exchange, whether or not they took possession of any of the property which the plaintiff had a mortgage upon; the plaintiff in this respect must satisfy you by a preponderance of the evidence that these defendants, in concert with others who had mortgages, did take the property mentioned in the plaintiff's chattel mortgage, or some portion of it, before the plaintiff is entitled to recover; and then, if you shall find that the defendants did take possession, and caused to be sold and converted to their own use,

any property described and mentioned in the plaintiff's chattel mortgage, then the defendants are liable for the value of so much as they took, unless the defendants shall have satisfied you by a preponderance of the evidence that their mortgage was given for that property, because it was taken in order to enable Bell and Lewis to purchase other and better fittings for the hotel; and if the defendants shall have satisfied you that notwithstanding you may believe from the evidence that they took certain property that was in the plaintiff's mortgage,— if they shall have satisfied you by a preponderance of the evidence that these mortgages were taken in good faith for the purpose of enabling Bell and Lewis to better furnish and fix up the Balcom House, then the defendants are not liable. So the liability of the defendants depends upon two substantive propositions, and you must find upon those two in order to warrant you in finding a verdict for plaintiff. *First,* you must find by a preponderance of the evidence that they took property which the plaintiff had a valid mortgage upon, and converted it to their own use; and, *second,* that in so taking it they took it under mortgages which were not valid, because they were not taken under the power which the plaintiff gave Bell and Lewis to dispose of the property to secure other and better furniture and fittings for fitting up the hotel. Upon the first proposition, that they took property secured by the chattel mortgage, the burden of proof is upon plaintiff, but in respect to the second proposition, that these mortgages were executed for the purpose of enabling Bell and Lewis to purchase other and better fittings, the burden of proof is upon the defendants. Now, there was no objection to Brasher Bros. and these subsequent mortgagees acting in concert by one agent if their mortgages were *bona fide* and valid, and they had a right, each of them, to foreclose their mortgages at one and the same time, and by one and the same agent, and nothing is to be adjudged against them on

that account.   Their liability, if there be any liability at all, depends upon the ground that they have wrongfully taken certain property that the plaintiff had a chattel mortgage upon and converted it to their own use, without having brought themselves within the provisions of this mortgage; that is, of getting chattel mortgages which would supersede the plaintiff's chattel mortgage for the purpose of enabling Bell and Lewis to purchase other and better fixtures and furniture for the said hotel. You must identify this property for the one purpose or the other, as indicated by my charge, and as indicated by the evidence, as best you can to determine the controversy.

"The measure of the plaintiff's recovery must in no event exceed the sum of $1,000, with interest thereon from February 19, 1881; but, even though the plaintiff should recover, he is not necessarily entitled to recover that amount, unless the value of the property, which the defendants shall be held or found to have wrongfully converted, would amount to that sum.   You are the judges of the weight of the evidence and of the credibility of the several witnesses, and from all the testimony and facts and circumstances of the case, appearing at the trial, fairly considered and weighed, you are to arrive at the truth of this matter, and found your verdict upon it under the rule of law given to you by the court.   The court instructs the jury that the plaintiff having averred a demand in his complaint and the defendant having denied it, to entitle the plaintiff to recover you must find that the plaintiff demanded the return of those goods from the Brasher Bros.   If you find for plaintiff against the defendants B. P. and L. B. Brasher, the form of your verdict should be as follows, viz.: We, the jury, find the issues here joined between the plaintiff and defendants B. P. and L. B. Brasher for the plaintiff, and we assess the plaintiff's damages by occasion of the premises in his complaint specified against said defendants at the sum. of ——."

The defendants prayed the following instructions:

"The jury are instructed that the plaintiff in this case claims damages against the defendants Brasher Bros., because he says that they seized, took into their possession, and sold certain goods and chattels upon which he claims to have had a lien as a chattel mortgage. If you believe from the evidence that the defendants Brasher Bros. did not convert to their own use, or sell any of the goods and chattels covered by the plaintiff's chattel mortgage, your verdict will, of course, be for the defendants. If, however, you should believe from the evidence that the said Brasher Bros., acting in conjunction with Richmond Bros. & Farnsworth, Richmond & Farnsworth, and Fishel, Kohn & Wise, did seize, take into their possession, and sell some of the goods and chattels described in plaintiff's chattel mortgage, and that the value of the goods and chattels so taken and sold did not exceed the amount of the indebtedness then due and owing from the defendants Bell and Lewis to the said Richmond & Farnsworth, Richmond Bros. & Farnsworth, Fishel, Kohn & Wise, and Brasher Bros., you should in like manner find in favor of the said Brasher Bros.

"The court instructs the jury that a chattel mortgage of personal property where the mortgagor, as in this case, is allowed to continue in possession of the property, and sell and dispose of the same, is in law fraudulent and void as against the creditors of the mortgagor, as well as against subsequent purchasers and incumbrancers of the same. Inasmuch, therefore, as the plaintiff's said chattel mortgage permitted the said Bell and Lewis to remain in possession of the mortgaged chattels, and to sell and dispose of the same, the plaintiff is not entitled to recover anything from the said Brasher Bros. as for a wrongful conversion of any such goods and chattels, even though they should believe from the evidence that the said Bell and Lewis did sell, mortgage or otherwise dispose of some of the said goods and chattels to the said

Brasher Bros. or any other person or persons whatsoever.

"The jury are further instructed that the burden of proof in this case is upon the plaintiff, and it is for him to prove his case by a preponderance of the evidence. If the jury, therefore, find that the evidence in this case preponderates in favor of the defendants, then the plaintiff cannot recover, and the jury should find for the defendants.

"The jury are further instructed that the defendants cannot be held liable for a conversion of any of the goods and chattels in controversy in this case without a definite demand by the mortgagee, and a definite refusal to surrender them. If, therefore, you believe from the evidence that the plaintiff did not make a definite demand upon the said Brasher Bros. for a return of the said goods and chattels, or that they did not make a definite refusal to surrender them, your verdict should be in their favor."

This the court refused to give, but indorsed thereon, "Given in substance."

Of the eleven assignments of error relied on by plaintiffs in error, it is unnecessary to notice more than one,— the second, which attacks the validity of the Christophe mortgage, as against Brasher Bros.; for upon the correctness of the construction of that mortgage, by the district court, the validity of this judgment depends. In fact, all the other assignments, except the first and fourth, are but different statements of the point made in the second. If the Christophe mortgage was valid against plaintiffs in error, there is no error in the judgment and proceedings of the court below; if not, then the judgment in this case must be reversed. It cannot be denied that the rulings of the courts of the several states as to the validity of a mortgage, reserving the right to the mortgagor to sell and dispose of the property mortgaged for his own use, have been various and conflicting. But it

seems that in this state the ruling upon that question has been uniform, and the doctrine is settled here. In *Bank v. Goodrich*, 3 Colo. 141, the mortgage covered a stock of clothing, and by its terms the mortgagor was permitted to retain, use and enjoy the property. The only use to which such property could be put was to sell it, which he did, with the knowledge of the mortgagee; and the court, in a unanimous opinion, held the mortgage void as against the creditors of the mortgagor. In *Wilcox v. Jackson*, 7 Colo. 521, it does not appear whether the mortgage provided for a retention and use of the property mortgaged, but as a matter of fact, the mortgagors did retain the possession, and sold the goods for their own benefit with the knowledge and consent of the mortgagee. In that case it was held that the leaving of the goods in the possession of the mortgagors and permitting them to sell the same for their own benefit was fatal to the validity of the mortgage. Still later, in the case of *Wilson v. Voight*, 9 Colo. 614, where the mortgage provided that the mortgagor, Voight, should retain, use and enjoy the mortgaged property, this court held the mortgage void. Helm, J., in speaking for the court, used the following language: "The instrument contained a provision authorizing the mortgagor, until default, to retain the possession, use and enjoyment of the property mortgaged. It is difficult to understand how the mortgagor could use and enjoy a stock of merchandise without selling or disposing of the same. But we shall assume that the instrument contains no language affecting its validity. The testimony of the mortgagee himself establishes the following facts, viz.: That after the mortgage was executed and delivered, the mortgagor continued to sell and dispose of goods from the stock included, in the ordinary and regular course of trade; that he applied none of the proceeds from such sales to the payment of the notes secured by the mortgage, but retained the same for his own use and benefit; and that these things were done with

the full knowledge and consent of the mortgagee. This sale of goods and disposition of the proceeds with the mortgagee's consent were acts wholly at variance with the idea of *security*, fundamental to such transaction,— acts which were inconsistent with the purposes of chattel mortgage statutes, and stamped upon the entire transaction a brand of bad faith, difficult of satisfactory explanation. * * * Predicated upon these considerations is the view sustained, as we think, by the larger number and better reasoned cases, viz.: That the *existence* of the facts mentioned, whether shown by the mortgage or by evidence *aliunde*, wholly invalidates the transaction as to creditors. The position that the motive of the mortgagor and mortgagee should, under such circumstances as those before us, remain a question of fact to be determined by the jury upon all the evidence, is taken in able and ingenious opinions; but when carefully analyzed, it will be found that these opinions are based more upon consideration of probable hardship and inconvenience in individual cases, than upon solid principles of law, or broad and intelligent grounds of public policy."

Here the mortgage permits the mortgaged chattels to be converted into money, for the sole use and benefit of the mortgagors, nor is the effect of the mortgage in any way altered or changed by the fact that the mortgagors are required to re-invest the funds arising from the sale of the chattels in other furniture to be put in the house. Had the mortgage contained an express provision declaring that the newly-acquired property should be covered thereby, it is doubtful if the legal effect would have been changed. But we do not pass upon this question; it is enough to say that if such intention existed it is not sufficiently expressed. Upon the new-acquired property the mortgagee had no lien or security; it became the absolute property of the mortgagors, liable to seizure upon attachment, or execution by other general creditors, or to be incumbered to such creditors by chattel mortgage.

The district court seems to have supposed that because the mortgagors were bound by the terms of the instrument to re-invest the proceeds of the old furniture in new, so long as the old remained unsold, Christophe had 'a lien upon it. This view is plausible, but not sound. The very question came up for adjudication in *Wilson v. Voight, supra*, and was decided adversely to the view assumed by the district court. It is there said: "The fact that other property besides merchandise was included in the mortgage does not affect the result. There are cases which hold that such an instrument may be void in part, and in part valid. * * * But we are inclined to accept and apply the doctrine elsewhere announced, that, if the mortgage be void as to a portion of the property mentioned therein, it is void altogether. It is the *agreement to sell*, retaining the proceeds, or the act of selling with the mortgagee's consent, and retention of the proceeds, that invalidates the transaction. Whether this agreement or this act relate to one part of the property mortgaged or another it is a matter of little significance. In a case like the one at bar, where there is no express agreement, why should the mortgage be held good as to fixtures, but void as to the goods remaining unsold? It may be that no more goods would have been disposed of. And it may be that had things remained *in statu quo*, and Voight returned, he would have proceeded to sell the fixtures. If, under a contract providing for the sale of merchandise, the mortgage may remain valid as to fixtures and other property, it should follow that when the contract related to a particular line of goods, or a particular part of the stock, the mortgage would remain unassailable as to the rest of the wares or commodities. The welfare of all parties interested will, we think, be best subserved by holding the mortgagee to a strict degree of care in seeing to it that the transaction is not tainted with this objectionable feature. There will, in our judgment, be less confusion, and in the end less real injustice,

by adhering to the rule that if the mortgage is upon this ground void in part, it is wholly void."

The agreement to sell invalidates the mortgage as to creditors and incumbrancers, and this effect takes place at the moment of the delivery of the instrument. It is not necessary to this effect that any of the property be sold under the power. The transaction is vitiated *ab initio* as to all the property upon which it is attempted to create a lien, by the reservation of such right, and not by the exercise of it. Every objection which can be conceived against a chattel mortgage, like those in the cases cited, will apply to this one. The provision that the chattels may be sold for a designated purpose only, does not help the mortgagee, when if the purpose is executed he is bereft of all security. In this case, the more speedily Bell and Lewis executed this power to sell according to its terms, the more completely was Christophe deprived of his security. The transaction has every feature and element of an incumbrance made for the purpose of defrauding creditors. If the construction adopted by the district court were correct, then Bell and Lewis could have held this property until one day before the maturity of their debt to Christophe, protected from execution or attachment at the suit of other creditors, and then have sold it, applied the proceeds to their own use, and if such other creditors should have been fortunate enough to find other property upon which to levy attachments, they might have been compelled to prorate with Christophe. Whatever the motives of the parties to such a transaction may be, viewed as a moral question in the business of every-day life, its effects are injurious, and in law and equity such agreements are fraudulent *per se* as against creditors and subsequent incumbrancers.

It follows, therefore, that the judgment must be reversed and the case remanded, with directions to proceed according to the views expressed in this opinion.

We concur: STALLCUP, C.; RISING, C.

PER CURIAM.    For the reasons assigned in the fore-
going opinion the judgment of the district court is re-
versed and the cause remanded for a new trial.

*Reversed.*