Bissell, P. J.,
delivered the opinion of the court.
When a party who has never been in possession of personal property brings replevin, he must undoubtedly show some kind of a title, resulting from a general or special property in it, which gives him the right of possession as against the person who holds it. Recognizing the force of this principle, Harding attempted to show his right by proof of .the trust deed, the sale under it, and his purchase. There was a claim that what he did at the ranch in Park county when he went to demand the property gave him control of the cattle in Eagle which were taken by the sheriff under *411 his attachment, and held under an execution at the time this suit was brought.
The first matter to be determined respects the statute which has been quoted. There was contention in the argument that the instrument which is the foundation of Johnson’s title was not a chattel mortgage, and did not come, either by its description or its character, within the definition of this class of security. It is likewise insisted that the nature of the property and the character of the bonds secured by the instrument must necessarily take it out of the operation of this act. Whatever force there may be in the suggestion that, because the bonds ran for ten years, and the property could not be preserved intact for that period without a practical destruction of the security, we are not at liberty to consider these matters in the resolution of the inquiry; This would be judicial legislation which nothing short of a public necessity would warrant, and it may be doubted whether any emergency would justify it. There is no analogy between cattle and the rolling stock of a railroad. In the latter case, this sort of property is an integral part of the road, and absolutely essential to its successful operation and maintenance as a railroad. The road itself runs through many counties; the property is in one county to-day and in another to-morrow, and often travels the circuit of the entire state. For these as well as other reasons which will readily occur, this sort of property has never been regarded as coming within the provisions of chattel mortgage acts in states where the question has been raised as to the necessity to observe the provisions of such statutes in the recording of railroad transfers and securities. There is no such practical difficulty with a herd of cattle. The herd can be kept in the limits of the county which is the home of the corporation, the instrument may be recorded in whatever counties the cattle may run, and all statutory limitations can be regarded in the construction of the instrument. The only difficulty springs from the duration of the mortgage. If it runs for ten years, and the mortgagors are compelled to keep the *412 same identical cattle, this duty would in some measure destroy the value of the security, because the age of the herd would render it practically unsalable. This seems a very substantial impediment when parties desire to issue corporate bonds running for a period of years, and to provide for their payment out of a herd then in the corporate ownership. We cannot, however, on this account legislate on this subject. The statute declares that the provisions of the chattel mortgage act shall extend to all deeds of trust which have the effect of a mortgage upon personal property. That this particular instrument had that effect does not admit of doubt. If the cattle had been dissevered from the ranch, and there had been two instruments executed to secure the bonds, — one a trust deed upon the realty, and the other a chattel mortgage upon the herd, — nobody would have presumed to question the operative force of the mortgage act upon the instrument. That both species of property are included in one deed can make no possible difference when the statute says that if such an instrument is intended to operate as a mortgage or lien upon the property it shall be held to be within its provisions. We are thus driven to the conclusion that, in order to determine the rights of the parties, we must look to the act and its judicial construction, and the instrument which the parties have executed, to settle the controversy.
The mortgage deed is clearly invalid under the act as it has been construed by the supreme court and by this. It will be observed the corporation attempted to mortgage its entire herd, as well as the seven thousand head included in it, which was the limit to which it must always be maintained during the life of the security. It is practically conceded that seven thousand was not the exact number, but there were cattle outside of it, and of necessity there would be more if the herd increased. The parties agreed that the mortgagor should have the right to dispose of both cattle and horses from time to time, as the cattle should reach the stage of beef, or as the horses should become unproductive and useless, and apply the proceeds to their own uses and benefit. Such a provi *413 sion has been uniformly held by the courts of this state to be absolutely repugnant to the provisions of the statute, and necessarily void as against attaching creditors. As this court said, speaking by the writer of this opinion: “ By the terms of the attempted contract, the cattle company had the right to use and enjoy the property and dispose of it in the ordinary methods, and it was under no obligation by the provisions of the security to account to the mortgagees for the proceeds of what might be sold. Such a mortgage has been adjudged invalid as to all existing creditors, who are permitted to assert its invalidity as against any but Iona fide purchasers for a valuable consideration.” As it was well put by the learned justice of the supreme court who delivered the opinion which first established the law in the state (9 Colo., infra), “ when the mortgagee stipulates, either in the mortgage or out of it, that the mortgagor may sell the very thing composing his security and retain the proceeds, he thereby destroys every vestige of a valid statutory or common law mortgage, and leaves himself in no better position than if it had not been executed. Besides, the inevitable tendency of the transaction is disastrous to other creditors of the mortgagor; for the effect is to hinder and delay such creditors, while the mortgagor makes way with the property, and leaves the general aggregate of his indebtedness undiminished. Predicated upon these considerations is the view sustained, as we think, by the larger number and the better reasoned cases, viz., that the existence of the facts mentioned, whether shown by the mortgage or by evidence aliunde, wholly invalidates the transaction as to creditors.”
In the Brasher Case (10 Colo., infra), the court by the learned commissioner, Mr. Macon, held “ that the agreement to sell invalidates the mortgage as to creditors and incumbrancers, and this effect takes place at the moment of the delivery of the instrument. It is not necessary to this effect that any of the property be sold under the power. The transaction is vitiated ab initio as to all the property upon which *414 it is attempted to create a lien, by the reservation of such right, and not by the exercise of it.”
It is thus plain it is the law of this state that a mortgage like that from which' Johnson derives his title is invalid as against creditors, and cannot prevail in a contest concerning the property. Wilson v. Voight, 9 Colo. 614; Brasher v. Christophe, 10 Colo. 284; Harbison v. Tufts, 1 Colo. App. 140; Wile et al. v. Butler et al., 4 Colo. App. 154.
If, in our judgment, the present case by its proof was not brought so clearly within the purview of these decisions, we might be called upon to decide some other questions of considerable difficulty which are suggested in the briefs of counsel. Since our conclusion respecting this matter entirely determines the rights of the parties, we do not deem it necessary to consider or decide these other questions.
For the error which the court committed in rendering judgment for the plaintiff, this case must be reversed and remanded.

B,eversed.