## WILSON V. VOIGHT ET AL.

1. Where a chattel mortgage covers a stock of goods, and the mortgagor is permitted to remain in possession by the terms of the mortgage, and is allowed by the mortgagee to sell the goods in the regular course of trade, and retain the proceeds to his own use, the mortgage is void as to other creditors of the mortgagor.

2. In such case possession taken by the mortgagee under the mortgage does not protect property against attachment by another creditor.

3. The fact that the mortgage includes other property besides merchandise does not change the result. The instrument being void in part is void altogether.

*Appeal from County Court of Clear Creek County.*

IN 1882 Voight was engaged in merchandising, renting a store-room for the purpose from Wilson. Upon dissolution of a partnership previously existing between Voight and Gerhardt, Voight retained the business, ex-

ecuting to Gerhardt for the latter's interest his promissory notes for some $500, and also, to secure the same, a chattel mortgage upon the fixtures, tools, implements, accounts due, and stock in trade. This mortgage was in proper form and duly executed, but was not recorded. It provided that Voight should retain, use and enjoy the mortgaged property. At a subsequent date, Voight suddenly disappeared, leaving the accounts, fixtures, tools and implements, together with all of the goods that remained unsold, in the store-room rented from Wilson. Gerhardt, upon learning of Voight's disappearance, proceeded to the premises, took possession under his chattel mortgage of the remaining mortgaged property, and removed it to premises of his own. At the time of his disappearance, Voight owed Wilson for unpaid rent. Upon learning of Gerhardt's action in removing the property, Wilson immediately protested against such conduct, whereupon Gerhardt informed him of the chattel mortgage, and showed it to him; Wilson thus for the first time became aware of its existence. Wilson at once brought suit against Voight for the rent, and attached the property in Gerhardt's hands. Gerhardt interpleaded, asserting a right thereto by virtue of his chattel mortgage, and actual possession thereunder. Judgment was rendered in the county court for Gerhardt, from which judgment Wilson duly prosecuted this appeal. The remaining essential facts sufficiently appear in the opinion.

The following provisions of our chattel mortgage statute are involved in the case, viz.:

"No mortgage on personal property shall be valid, as against the rights and interests of any third person or persons, unless possession of such personal property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded as hereinafter directed. Sec: 163, Gen. St.

"Any person who may buy or otherwise obtain any personal interest in any personal property which is mort-

gaged in pursuance of this act, but the mortgage of which has not been recorded, and with actual notice of such mortgage, shall be deemed and considered to have bought or obtained such interest in such property subject to such mortgage, the same as though such mortgage had been properly recorded." Sec. 172, Gen. St.

Messrs. GEO. M. DUNN and T. B. BRYAN, for appellant.

Messrs. T. J. CANTLON and J. C. FITNAM, for appellees.

HELM, J. A stock of merchandise constituted the larger part of the property covered by the chattel mortgage. The instrument contained a provision authorizing the mortgagor, until default, to retain the possession, use and enjoyment of the property mortgaged. It is difficult to understand how the mortgagor could "use and enjoy" a stock of merchandise, without selling or disposing of the same. But we shall assume that the instrument contains no language affecting its validity. The testimony of the mortgagee himself establishes the following facts, viz.: That, after the mortgage was executed and delivered, the mortgagor continued to sell and dispose of goods from the stock included, in the ordinary and regular course of trade; that he applied none of the proceeds from such sales to the payment of the notes secured by the mortgage, but retained the same for his own use and benefit; and that these things were done with the full knowledge and consent of the mortgagee. This sale of goods and disposition of the proceeds with the mortgagee's consent were acts wholly at variance with the idea of *security*, fundamental to such transactions,— acts which were inconsistent with the purposes of chattel mortgage statutes, and stamped upon the entire transaction a brand of bad faith difficult of satisfactory explanation.

Upon the foregoing position the authorities are in perfect accord; but not so as to the following question: Do

the facts that the mortgagor, with the mortgagee's knowledge and consent, continues to dispose of merchandise mortgaged, without applying the proceeds or any part thereof to a reduction of the mortgage debt, render the mortgage absolutely void as to other creditors of the mortgagor, or do these acts simply constitute a badge of fraud which may be overcome by proof of the validity of the mortgage debt, and perfect *bona fides* of the transaction in all other respects? Upon this question there is great contrariety of judicial opinion. Borrowing the expressive language of Mr. Justice Davis in *Robinson v. Elliott*, 22 Wall. 513: "The cases cannot be reconciled by any process of reasoning or on any principle of law."

At common law, personal property could only be made security for a debt by actual delivery into the creditor's custody. To obviate the inconvenience thus arising, and to meet the growing demands of trade, statutes similar to ours were enacted, authorizing the debtor until default upon compliance therewith, to retain the possession, use and enjoyment of the property mortgaged. Under these statutes, when complied with, the mortgagee's lien is good for a specified period, even though there be no change of possession. But such statutes were never intended to sanction the entire destruction of the thing itself, or its value, constituting the security. The use and enjoyment mentioned are a use and enjoyment not inconsistent with the continued protection of the mortgagee and other creditors of the mortgagor. When the mortgagee stipulates, either in the mortgage or out of it, that the mortgagor may sell the very thing composing his security, and retain the proceeds, he thereby destroys every vestige of a valid statutory or common-law mortgage, and leaves himself in no better position than if it had not been executed. . Besides, the inevitable tendency of the transaction is disastrous to other creditors of the mortgagor; for the effect is to hinder and delay such creditors, while the mortgagor makes way with the property, and leaves

the general aggregate of his indebtedness undiminished. Predicated upon these considerations is the view sustained, as we think, by the larger number and the better reasoned cases, viz., that the *existence* of the facts mentioned, whether shown by the mortgage or by evidence *aliunde*, wholly invalidates the transaction as to creditors.

The position that the motive of the mortgagor and mortgagee should, under such circumstances as those before us, remain a question of fact to be determined by a jury upon all the evidence, is taken in able and ingenious opinions; but when carefully analyzed, it will be found that these opinions are based more upon considerations of probable hardship and inconvenience in individual cases than upon solid principles of law, or broad and intelligent grounds of public policy. We shall not review or discuss these cases, or those supporting the conclusions adopted, but content ourselves by referring counsel to the very thorough and learned consideration thereof by Mr. Pierce in his excellent work on Mortgages of Merchandise. See, also, *Bank v. Goodrich*, 3 Colo. 139.

We do not hold that a mortgage upon merchandise permitting the mortgagor to continue the sale of goods, but requiring him to apply the proceeds in discharge of the debt secured, is void as to his other creditors. The validity of such mortgages, the transaction being *bona fide*, is upheld by many well-considered decisions. In such cases the value of the security suffers no diminution, except as the debt secured is itself diminished. The transaction is not unlike the delivery of goods in payment of the debt of a preferred creditor; since the aggregate of the mortgagor's indebtedness is reduced, and since he may pay whom he will, the unpreferred creditors are held to suffer no legal wrong.

The mortgage in the case at bar, being void as to creditors, could not, in our judgment, strengthen the possession taken by the mortgagee. A void instrument cannot

be the foundation of a valid lien. When the mortgagee seized the property, he occupied the attitude of a mere general creditor without any specific lien. His seizure gave him no advantage. Any other *bona fide* creditor could levy his attachment or execution upon the goods in controversy, and thus secure precedence in the payment of his debt therefrom. *Blakeslee v. Rossman*, 43 Wis. 116; *Robinson v. Elliott, supra;* Pierce, Mortg. Mdse. § 143, and cases. It should be borne in mind that the seizure is shown to have taken place *under the mortgage*. There is no claim of a voluntary delivery by the mortgagor as a pledge or payment, constituting an entirely new and independent transaction.

The fact that other property besides merchandise was included in the mortgage does not affect the result. There are cases which hold that such an instrument may be void in part and in part valid. *Barnet v. Fergus*, 51 Ill. 352; *In re Kahley*, 2 Biss. 383; *Re Kirkbride*, 5 Dill. 116. But we are inclined to accept and apply the doctrine, elsewhere announced, that, if the mortgage be void as to a portion of the property mentioned therein, it is void altogether. *Horton v. Williams*, 21 Minn. 187; *Russell v. Winne*, 37 N. Y. 591. It is the *agreement to sell*, retaining the proceeds, or the *act of selling* with the mortgagee's consent, and retention of the proceeds, that invalidates the transaction. Whether this agreement or this act relate to one part of the property mortgaged or another is a matter of little significance. In a case like the one at bar, where there is no express agreement, why should the mortgage be held good as to fixtures, but void as to the goods remaining unsold? It may be that no more goods would have been disposed of. And it may be that had things remained *in statu quo*, and Voight returned, he would have proceeded to sell the fixtures. If, under a contract providing for the sale of merchandise, the mortgage may remain valid as to fixtures and other property, it should follow that when the contract related

to a particular line of goods, or a particular part of the stock, the mortgage would remain unassailable as to the rest of the wares or commodities. The welfare of all parties interested will, we think, be best subserved by holding the mortgagee to a strict degree of care in seeing to it that the transaction is not tainted with this objectionable feature. There will, in our judgment, be less confusion, and in the end less real injustice, by adhering to the rule that if the mortgage is, upon this ground, void in part, it is wholly void.

The judgment is reversed.

*Reversed.*