Bissell, J.,
delivered the opinion of the court.
It is impossible to sustain this judgment. It is not even a border line case. Its facts bring it entirely within repeated adjudications of the appellate courts, and Grace, who was the plaintiff, failed to establish any title to the property involved. J. F. Myser was indebted to Grace in February, 1892, and on the 23d day made a chattel mortgage, which covered a lot of horses and wagons which he owned and was using in the livery and transfer business. According to the terms of the instrument, it was to secure two promissory notes, one for $3,500, pa3rable one 3rear after date, and one for $1.00, payable two years after date. The mortgage was in the usual form, conveyed the property, gave the mortgagor the right to retain possession, to use and enjoy it until default, with the usual conditions with respect to possession by the mortgagee on breach of the conditions or in case the property should be attached or removed or sold. The mortgage was signed by Myser, but it was not acknowledged, nor was there any certificate of acknowledgment according to the provisions of section 164, General Statutes, 1883, respecting chattel mortgages. Matters ran along until October, 1893. The principal note was not paid and there was a default in the payment of interest. The mortgagee became concerned about the adequacy of his security, and Myser executed a deed to the property where the personal property was located. Some evidence was introduced *23 showing the deed was given as an additional security for the payment of the original debt, but this is unimportant, except as touching the question of possession. There was practically no change in the condition of affairs after the execution of the deed. Myser continued to occupy the building and to hold and use the property until the month of February, 1894. There is some controversy over what was done in that month, and the date at which Grace took steps, if at all, to reduce the property to possession. According to Grace’s statements and the averments of his pleading, he took possession on the 3d of February. The evidence is wholly unsatisfactory in regard to that act. It was not clearly shown that he took possession prior to the time the writ of attachment was levied on some of the chattels. Grace claims to have done it, but what he states about it well satisfies us he took no legal possession until after the levy of the attachment writ. Whatever possession he had was what might be said to flow from the holding of the title to the realty wherein the property was stored. It cannot be said that the title drew after it the possession of the personalty. Myser still occupied the premises, lived there, had a key to the barn, and was evidently using the property as before. There was some little controversy between Grace and Myser in regard to his right to let the horses and wagons without accounting to Grace for the hire. Grace insisted the interest was not paid, and whatever was earned by the teams should be turned over to him. We regard this question of possession as of very slight consequence, for the case is easily settled on other grounds, though we are quite of the conviction it was not what the law requires in order to vest a title in the mortgagee as against an attaching creditor. The rule respecting the necessity to take possession is thoroughly settled in this state. What that must be is determined by the cases. Even if the mortgage had been good in law, the mortgagee was still required to do what would indicate a change of ownership and a change of title under and by virtue of his security. Bas *24 singer v. Spangler, 9 Colo. 175; Wilcox et al. v. Jackson, 7 Colo. 522; Atchison v. Graham, 14 Colo. 217.
There are many other decisions following this same general line, both in the supreme court and in this, and there never has been any deviation from the general doctrine which these authorities announce.
Waiving this question, however, the case is completely settled by other adjudications. In order to obtain a security which shall be valid as against existing and attaching creditors, the instrument must be executed and acknowledged according to the statute. A failure to observe the statutory requirements is fatal to the validity of the mortgage, and the party thereby acquires no rights under it. It is invalid at its inception, and no subsequent act of the parties will serve to give it life and -vitality. Brasher v. Christophe, 10 Colo. 284.
The instrument offered in evidence was unacknowledged and bore no certificate of the officer taking the acknowledgment, or of one having the right to take it, and was necessarily void. It is quite true mortgages unacknowledged and of a very informal character are good as between the parties, and wherever the terms of the instrument show it to have been executed for the purposes of security, it will ordinarily be held adequate to transfer the title and the mortgagee will acquire rights which he may enforce. This principle has no application when the rights of creditors or third persons are involved. The omission to have the mortgage acknowledged and the certificate of the officer put thereon is fatal. Crane et al. v. Chandler, 5 Colo. 21; Horner v. Stout, 5 Colo. 166.
According to these authorities, this mortgage was of no validity, gave the mortgagee no rights, and it could not be enforced against Myser’s other creditors.
This entirely destroys whatever importance might otherwise be attached to the question of possession. It is entirely clear if Grace had taken possession under his mortgage prior to the time the attachment was levied, he would thereby acquire no rights against the attaching creditor, for the case *25 presents no such question as would arise if the mortgagor had delivered the property to Grace before he became indebted to Edinger and Ware. Since the mortgage was without legal force, the assumption of possession did not serve to give it validity, and, even though the mortgagee took the property into his custody, it would not be effectual as against the creditors. Ever since the decision of the Voight Case, this has heen the law in Colorado. Wilson v. Voight et al., 9 Colo. 614; Harper et al. v. The People, 2 Colo. App. 177; Harbison v. Tufts, 1 Colo. App. 140.
These cases are entirely decisive of the present controversy, and on their authority the judgment entered herein must be held erroneous.
The mortgage was void and the mortgagee acquired no rights thereunder. His acts did not aid him. By the levy of the writ, the attaching creditor acquired an interest in the property and the plaintiff was not entitled to recover.
For the error committed by the court in rendering judgment for the plaintiff, this case must be reversed and remanded.

Reversed.