No. 8989.

FIRST NATIONAL BANK OF FORT COLLINS *v.* SHAFER ET AL.

FRAUDULENT CONVEYANCE—*Chattel Mortgage.* Mortgagee of chattels permits the mortgagor to dispose of a considerable part of the mortgaged goods, and appropriate the proceeds to his own use. *Held* a fraud upon other creditors of the mortgagor, invalidating the mortgage and that possession taken by the mortgagee did not affect the result.

*Error to Weld County Court, Hon. Herbert M. Baker, Judge.*

Messrs. LEE & SHAW, for plaintiff in error.

Mr. JOHN PAUL LEE, for defendants in error.

Chief Justice Hill delivered the opinion of the court.

THIS case, instituted before a justice of the peace, was, upon appeal, tried to the court upon an agreed statement of facts. The judgment was against the plaintiff in error bank, who, upon a traverse of its answer to a garnishee summons, was held to be the debtor of Peter Balmer against whom the defendant in error had a judgment. The agreed record on error discloses, that on June 4th, 1915, Balmer was a farm tenant of one Signor, at which time they gave a joint note to the plaintiff in error for $1,300.00 due December 4th, following, securing it by a chattel mortgage on certain stock, machinery and crops then growing on the Signor place; that on November the 4th, 1915, Balmer and Signor executed to plaintiff in error another note for $340.00 due November 20th, same year, and secured it by chattel mortgage on that portion of the same property not then disposed of; that on December the 27th, following, Balmer turned over to plaintiff in error bank the stock and machinery covered by the mortgages; that on January 6, 1916, the bank sold it at public sale for the sum of $1,007.00 net. The testimony of Nelson, the bank's cashier, is to the effect that after crediting all amounts received from Balmer, he was still indebted to the bank on the note $147.00. It is admitted that the garnishee summons was served on

Nelson immediately at the close of said public sale, the proceeds being in his possession, but that no endorsement of them had been made on the notes. What Signor's interest in the matter was, is not disclosed. As the briefs treat the debt evidenced by the notes and the property covered by the mortgages as that of Balmer alone, we shall acquiesce in this view of it. The record shows that in August, September, October, November and December, 1915, Balmer sold to one Ogden $639.25 worth of oats and potatoes, which were covered by the first mortgage, and what was remaining when it was executed by the second; that he received in payment for these sales nine checks for $549.74; that the balance, $89.51, was used in the purchase of sacks, coal and the rent of sacks; that all of these checks but four, for a total of $94.73, went through plaintiff in error's bank; that in one of them for $108.90 the bank's name was inserted as one of the payees; that a sugar company gave checks for beets covered by these mortgages as follows: One for $431.45 payable to the bank, Balmer and Signor; one for beet seed for $150.00 (the payee in this check is not shown by the record) ; one to W. H. Barnes for $13.41; one to M. C. Andrews of $119.77, and one to the bank, Balmer and Signor for $93.90, two others to the parties last named for $838.39. Balmer testified that none of the $431.45 check went to the bank to pay off his notes, but that he was given permission to use this money to pay for hauling of beets and pay the help, protecting the bank's interest in the crops; that he was not clear as to the amounts paid out but testified to items as follows: beet hauling $75.00, threshing $116.00, cutting grain $40.00, for labor $93.90; that he paid $45.00 to a man in Ault on an old debt of his; $25.00 to Barnes for a cultivator; $15.00 for a hog and $45.00 to an implement company; that he fed most of the wheat and alfalfa covered by the mortgages to his hogs; that he had given the bank a rough estimate of the amounts paid out; that so far as he knew the bank had no knowledge that the funds were being used for other purposes than to save crops, except that he told Nelson of

purchasing cultivator from Barnes and feeding some of the wheat and alfalfa to his hogs. Nelson admitted that he gave Balmer permission to use some of the money but stated that it was for the sole purpose of harvesting the crops, that he had never asked him for payment of any settlement.

The record shows, that early in December, 1915, and before the bank took possession of the property it sold, a bank at Severance had secured a judgment against Balmer and garnisheed the sugar company; that the plaintiff in error bank paid $178.00 of the money received by it from the sales of these crops to the Severance bank in satisfaction of this judgment; that this payment was with the consent of Balmer; that the advertisement of the public sale of the property was signed by the auctioneer but included the language "First National Bank of Fort Collins, mortgagee"; that at the time of the service of the garnishee summons upon Nelson as cashier of the bank, the only credit endorsed on the notes was one for $414.98 bearing date December the 23rd, 1915. The judgment was against the bank for $270.89 being the amount of the Balmer judgment in favor of the defendant in error. The position of the trial court was that the public sale of the remainder of the property not theretofore sold by Balmer, was under the purported chattel mortgages by consent of Balmer, and not under any agreement between him and the bank by which he turned it over to them as security for the debt, or otherwise, than a surrender of possession under the purported mortgages; that, upon account of the acts of Balmer and the bank, pertaining to the mortgaged property, its disposition, etc., the mortgages were void as against the attaching creditors of Balmer.

The contention of the plaintiff in error that the property was turned over to the bank by Balmer, under an agreement outside of the mortgages, that the bank was to receive it as security for its debt, have it sold and apply the proceeds thereon,—is not sustained by the record. While the agreed statement of facts is not very clear on

several things, the deductions to be gathered from it on this are, that the bank took possession with the consent of Balmer, under its purported chattel mortgages, and that it was purporting to sell the property thereunder, otherwise why insert in the sale notice the words "First National Bank of Fort Collins, mortgagee." The record is silent as to any express declarations concerning such an agreement. If it had been made, it should have been inserted in the agreed statement of facts by appropriate language and not left uncertain to be urged by deductions. If such agreement could not be secured, then the testimony concerning it should have been produced and set forth in the record. This was not attempted. From the record before us, we are of opinion that there was no error in the ruling as made on this subject.

The record contains sufficient to sustain findings, that Balmer gave to the bank two notes for $1,640.00 and interest and chattel mortgages to secure each on his stock, equipment, farming implements and crops; that thereafter and during what is termed the life of the mortgages, it allowed Balmer to sell about $2,286.00 worth of crops covered by the mortgages and apply the proceeds to his own use, except $431.45, which the bank credited upon the notes; that checks for about $1,400.00 received from the sales of these crops, included the name of the bank as one of the payees; that checks for an additional sum of about $300.00 payable to Balmer received from the sale of these crops also passed through the plaintiff in error's bank; that the bank knowingly permitted Balmer to otherwise appropriate the most of the wheat and alfalfa crops covered by the mortgages. In such circumstances, we cannot agree with the contention of plaintiff in error that there is no testimony to sustain the findings of the trial court; that the action of the parties to the mortgages constitute a fraud against the right of the judgment creditors of Balmer. The defendant in error was entitled to its judgment as rendered. It had an execution or attachment outstanding against Balmer at the time of the sale. It

was looking for something to levy upon. The bank had all his property covered by the two chattel mortgages, and it was not only allowing him to sell part of it and convert the proceeds to his own use, thereby preventing his other creditors from collecting their claims, but was aiding him in such transaction, by having or allowing the checks received therefrom to include its name as payee, by collecting, or endorsing them to him, and instead of applying the proceeds in payment of his debts secured by the mortgages, it turned the money back to him, yet keeping the remainder of the property still covered by the mortgages and it thus continued to so do up to the time it took possession of the balance of the property not in this manner theretofore disposed of.

It may be conceded, as urged by counsel, that after a mortgagee takes possession, the mortgage, although otherwise defective or for some reason invalid, is good as between the mortgagor and mortgagee, and also as against creditors of the mortgagor where the mortgagee, in good faith, takes possession before the rights of other creditors have intervened by lien or levy. We cannot agree, however, that this rule should be extended to cover cases where the acts of both mortgagor and mortgagee have been such as to unlawfully defeat the rights of other creditors of the mortgagor in the collection of their debts, or in securing liens upon his property as an aid to their collection, thereby perpetrating a fraud against them. In such cases, the authorities are to the effect that the mortgage is void as against such creditors, and that the taking of possession by the mortgagee, under such circumstances, does not change this rule.

*Wilson v. Voight,* 9 Colo. 614, 13 Pac. 726; *Livingston v. Dry Goods Co.,* 12 Colo. App. 331, 56 Pac. 355; *Brasher v. Christophe,* 10 Colo. 284, 15 Pac. 403; *Durr v. Wildish,* 108 Wis. 401, 84 N. W. 437; *Andrews v. Partee,* 79 Miss. 80, 29 So. 788; *Putnam v. Osgood,* 51 N. H. 192; *Robbins v. Parker,* 3 Metc. 117, 44 Mass. 117.

In the circumstances of this case, as between these creditors of Balmer, so far as the remainder of the property covered by these mortgages or the proceeds derived from the sale thereof are concerned, equity and good conscience require that the mortgage debt should be treated as having been previously satisfied out of the proceeds received from the prior sales of the other property covered by the mortgages, or at least that they be held inferior, so far as any lien thereon is concerned, to that claimed by the other attaching judgment creditor.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*

Justices White, Garrigues and Bailey dissent.