## No. 11,895.

GLASS AND BRYANT MERCANTILE COMPANY *v.* FARMERS STATE BANK, ET AL.

Decided December 27, 1927.    Rehearing denied February 14, 1928.

Controversy over fund derived from sale of sugar beets and other chattels.    Judgment for chattel mortgagee.

## *Affirmed.*

### *On Application for Supersedeas.*

1.  CHATTEL MORTGAGE—*Sale of Property.*  The general rule in Colorado is, that if a mortgagee of chattels sells or voluntarily permits the sale of such chattels without applying the proceeds upon the mortgage indebtedness, it is fraudulent as to creditors and third persons.

2.  WORDS AND PHRASES—*Chattel Mortgage*—"*Creditors or Third Persons.*"  The weight of authority is that "creditors or third persons" are not general creditors, but, as used in the Colorado chattel mortgage act, mean only such creditors or persons as have acquired enforceable liens by execution or writ of attachment or by contract during the period of time that the mortgaged property remains in possession of the mortgagor.

3.  DEBTOR AND CREDITOR—*Preference.*  A debtor may pay any creditor whom he chooses, the payment to be applied on any debt upon which they may mutually agree, and no one without a lien or superior right may complain.

4.  CHATTEL MORTGAGE—*Proceeds of Sale—General Creditor.*  General creditor of a mortgagor of sugar beets is not entitled to the proceeds of the sale thereof as against other creditors holding valid mortgages thereon.

5.  DEBTOR AND CREDITOR—*Chattel mortgagee—Assignee.*  A general creditor, although holding an assignment of the debtor's rights to certain sugar beets delivered to a sugar company, may not successfully claim proceeds of the sale thereof as against mortgagees whose mortgages were given and recorded prior to his assignment.

6.    *Property Claims—Burden.* A proponent must first establish some right or interest of his own tied or fastened to the thing he claims was his when taken, before he can recover it or its value.

7.    ASSIGNMENT—*Retroactive.* An assignee of property may not have his assignment operate retroactively so as to defeat prior liens of others.

8.    DEBTOR AND CREDITOR—*Marshaling Assets.* Order of the trial court on motion of junior creditors, that assets of the debtor be marshaled, approved.

9.    APPEAL AND ERROR—*Change of Theory.* A plaintiff in error may not have the case considered on review on a theory different from that upon which he elected to proceed below, where the case was properly decided against him.

*Error to the District Court of Morgan County, Hon. L. C. Stephenson, Judge.*

Messrs. MUNSON & JONES, for plaintiff in error.

Mr. ARLINGTON TAYLOR, Messrs. JOHNSON & ROBINSON, for defendants in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

PLAINTIFF in error was an intervener, and defendant in error was the garnishee, in an attachment suit brought January 27, 1927, by The Farmers Platt Valley Milling and Elevator Co. (no longer in the case), against one Lebsock, a renter who raised sugar beets in the year 1926 on a farm in Morgan county. Lebsock became involved financially; his assets were insufficient to satisfy all demands, and this action concerns disputes of four of his creditors, between themselves, as to their relative rights to certain monies derived from the sale of sugar beets and other chattels belonging to Lebsock. The case is here on application for supersedeas, and the parties ask us to dispose of the entire matter now. For brevity, the claimants will be designated according to the abbreviations in

parentheses following their respective names. They are, The Farmers State Bank of Fort Morgan (the bank), The Glass and Bryant Mercantile Co. (Glass), Harry Epstein (Epstein), and The Peyton-Reinert Co. (Peyton). Glass is the plaintiff in error and the others named are all defendants in error. Incidental reference is made to the landlord and The Great Western Sugar Company, but the landlord has been paid his share, and neither his rights nor those of the sugar company are here involved.

Lebsock, in order to secure his notes, gave four chattel mortgages, as follows: On May 19, 1926, to the bank, covering livestock, farm machinery and certain crops, including a three-fourths interest in about 120 acres of sugar beets, to be grown on the land occupied by the mortgagor in Morgan county. On December 7, 1926, a second mortgage to the bank, covering certain personal property, including the sugar beets. On December 22, 1926, mortgage to Epstein, covering same property as in the first mortgage to the bank, except the sugar beets and other crops. This instrument was made expressly subject to the bank's first mortgage. Thereafter, on the same day, December 22, 1926, mortgage to Peyton, covering the same property as in the Epstein mortgage, and made expressly subject to the bank's first mortgage and the Epstein mortgage. Each of these four mortgages was recorded on the day it was given in the office of the county clerk and recorder of Morgan county, where the chattels were situate.

On January 28, 1927, the bank sold certain personal property (not including any beets) belonging to Lebsock, and applied the proceeds in part payment on its mortgage indebtedness. All or nearly all of Lebsock's second mortgage to the bank has been discharged by sale of certain chattels covered thereby; no rights intervened between the bank's first and second mortgages; the assignments of error mention only one, and so we shall hereafter treat only of the first one, executed and recorded on May 19, 1926.

The Glass claim is based upon a promissory note from Lebsock, dated August 19, 1926, for goods sold in 1925, and upon an assignment to secure the same, dated November 29, 1926, from Lebsock to Glass, of all his rights and claims "in and to certain sugar beets delivered to The Great Western Sugar Company in the year 1926 and in and to any monies due or to become due to him as bonuses, or otherwise." The beets referred to were the same as those mortgaged to the bank. The Glass assignment was filed with the sugar company on the same day that it was given, November 29, 1926, but the bank did not have notice thereof until on or about December 17, 1926, and neither Epstein nor Peyton had notice thereof until after their respective mortgages were recorded. The Glass assignment was acknowledged, but not filed in the county clerk's office.

The beets were raised on the land mentioned in the chattel mortgage to the bank, harvested in season, and delivered to the sugar company at Fort Morgan, Morgan county, between September 21, 1926 and November 20, 1926, inclusive. They were delivered to the sugar company, according to its custom, with the understanding on the part of all parties that checks were to be issued therefor, payable to the landlord, Lebsock the tenant, the bank, and such other parties as appear to have an interest therein.

The sugar company paid for the beets in three checks, delivered to the bank on the several dates thereof: first, October 14, 1926; second, November 15, 1926, and third, December 15, 1926. The name of Glass appears in the third check only, the sugar company then knowing of the assignment of Lebsock to Glass. The bank paid part of the first check to Lebsock, and applied the remainder on certain other unsecured notes that it held, signed by Lebsock. It applied none of the first check on its mortgage. It applied part of the proceeds of the second check on its mortgage, part on Lebsock's unsecured notes to the bank, and credited the remainder to

Lebsock's personal account. No payments were made to Lebsock out of the proceeds of the sugar beets, nor upon any other indebtedness, after the bank had notice of the assignment from Lebsock to Glass. The third check, although in the bank's possession, had not been disposed of or apportioned when the action was commenced; it was tied up in this litigation. It was in the sum of $1,999. The bank claimed $920 of the amount as the balance due on its mortgage, and asked for an order of court as to the disposition of the remaining $1,079. Glass claimed that the bank's mortgage was void because, out of the proceeds of the first two checks for beets, the bank applied part on unsecured debts, and paid part to Lebsock.

The court held, however, that the bank had a right to apply the beet money on its chattel mortgage, or to any other debt of Lebsock to the bank, prior to the notice that the bank got on or about December 17, 1926, of the Lebsock-Glass assignment, and that the mortgage held by the bank was a valid and subsisting lien against the proceeds of the sale of the property described therein, to the extent of the balance of its claim in the sum of $920; that the bank was entitled to retain that amount; that out of the balance of $1,079 in its hands, Epstein's mortgage should be first satisfied, and the remainder paid to Peyton; that the delivery of the beets to the sugar company completed on November 20, 1926, constituted an equitable assignment to the bank of the fund given in payment therefor, and that it took effect before the Lebsock-Glass assignment on November 29, 1926. The court also found Epstein and Peyton to be entitled to have the remaining assets marshaled, after the bank had been paid. This is more fully mentioned hereafter. The effect of all of the above was that the bank came first, Epstein second, and Peyton third. The money was thus exhausted, and so Glass got nothing, in consequence of which he brings the case to this court.

The first error assigned by Glass is that the bank, by its own acts, destroyed the lien of its chattel mortgage; and second, that the court erred in directing the marshaling of assets in favor of Epstein and Peyton. The bank also objects to the last named order.

1. The general rule in this state is that if a mortgagee of chattels sells or voluntarily permits the sale of such chattels, without applying the proceeds upon the mortgage indebtedness, it is fraudulent as to creditors and third persons. *City Nat. Bank v. Goodrich,* 3 Colo. 139; *Wilcox v. Jackson,* 7 Colo. 521, 4 Pac. 966; *Wilson v. Voight,* 9 Colo. 614, 13 Pac. 726; *Brasher v. Cristophe,* 10 Colo. 284, 15 Pac. 403; *Wellington v. Terry,* 38 Colo. 285, 88 Pac. 467; *Hall v. Johnson,* 21 Colo. 414, 42 Pac. 660; *First Nat. Bank v. Shafer,* 64 Colo. 388, 172 Pac. 1, L. R. A. 1918E, 636.

2. But the application of the above to the case at bar is qualified by another salutary rule, which we quote from our previous decisions: "The weight of authority is that 'creditors or third persons' are not general creditors, but, as used in the chattel mortgage act, mean only such creditors or persons as have acquired enforceable liens by execution or writ of attachment, or by contract, during the period of time that the mortgaged property remains in possession of the mortgagor." *Bogdon v. Fort,* 75 Colo. 231, 235, 225 Pac. 247; *Brug v. Herbst,* 78 Colo. 128, 130, 239 Pac. 868.

3. The requirement that one must have a lien or superior right, to entitle one to come between a debtor and creditor when the former pays a bill, is not arbitrary or capricious. No other rule would be sensible. If it were open to a general creditor to object, no merchant, however humble, could count his change at night with confidence. He would be beset with the fear that some other creditor, disappointed in not having *his* bill paid, might be allowed to take it away from him, or cause it to be divided. Any one can see the absurdity and impossibility of constituting the court into a clearing house

or board of accountancy, to readjust the myriad business transactions of the world at the close of day, at the instance of a mere general creditor, or to take money from one and give it to another of equal or even less rank, or to make them divide it. Without considering the bankruptcy act, which is not here involved, the law and universal business custom may be said generally to be, that a debtor may pay any creditor whom he chooses, to be applied on any debt that they may mutually agree upon, as was done here, and that no one without a lien or superior right will be heard to complain.

4. The above proposition is not directly controverted in words, but the effect of it as applied here, is denied by counsel for Glass. They say, however, that Glass did have an assignment filed with the sugar company. But Glass was a mere general creditor when the act complained of occurred, and the bank had no notice of the Glass claim until December 17, 1926. Glass did not bring himself within the rule as to time, stated in *Bogdon v. Fort,* and *Brug v. Herbst, supra.*

5. Further arguing against the lien theory, counsel for Glass urge that the acts of the bank and Lebsock deprived Glass from obtaining security that he otherwise would have been able to get. As far as this record shows, however, Lebsock was exceedingly accommodating to any one that wanted a mortgage or assignment; he gave it whenever asked for, and on whatever property requested. Every party before us was the recipient of his generous signature; his pen was ever ready, and with him, it was "first come, first served." True, some of the mortgages or liens given by Lebsock were junior to those that went before, but in order to conform to the rule stated, that is, to give Glass a standing in court as an objector, a third or fourth mortgage from Lebsock on the same property, executed and recorded in due season, thus creating the requisite lien at the right time, might well have been as valuable to Glass as a first mortgage, for the one purpose, at least, of gaining admission to the adju-

dication, and of having his rights determined by the court. But without this prerequisite, his claim lacks the necessary foundation, for he is no better off than any general creditor. There is nothing to show that Glass could not have obtained a mortgage or lien in the first place, even though it might have been subject to some senior claim, as readily as he did after waiting until the first two beet checks had been applied, and after the right of the bank had become vested. As appears above, no payments were made to Lebsock out of the proceeds of the sugar beets, nor upon any other indebtedness, after the bank had notice of the Lebsock assignment. Until then, the bank had a right to assume that no persons but general creditors were involved, which was the actual fact when it apportioned the proceeds of the first two checks. It was therefore lawful for the bank then to use the money in discharge of any debt that Lebsock owed it, and in any way that was mutually satisfactory to such debtor and creditor.

There is nothing new or revolutionary in legal procedure in the requirement that a proponent shall first establish some right or interest of his own, tied or fastened to the thing he claims was his when taken, before he can get it or its value back. If there has been any misunderstanding about this, we are pleased to correct it now, as applied to the issues here raised.

6. The general object of proceedings to obtain relief from fraud, is that the party injured may be compensated, or be restored to his rightful original status, of which he may have been unlawfully deprived. But if the rule announced in *Bogdon v. Fort* and *Brug v. Herbst, supra,* did not obtain, then Glass would be elevated to a position above his status existing when the bank applied the money as it did. Glass was then only a general creditor, and as such could not then have asserted dominion over Lebsock's goods or chattels, or the proceeds thereof, in the absence of a contract or lien. Not being able to do it then, he cannot do it now. He did not get a lien by

his assignment, in any event, to operate retroactively, and the court cannot give it to him, nor reward him for his delinquency. His right to complain of the alleged wrongful act is determinative as of the date when such act was committed. It is worthy of more than passing observation that if Glass had obtained and given notice of a valid mortgage or assignment in due time, then the sugar company, under its custom that all knew about, would have included the name of Glass in subsequent beet checks; the bank would then have been put on notice and this suit obviated, or at least the Glass claim would have assumed a different character.

7. Counsel for Glass suggest that what we say here about general creditors is out of harmony with our previous decisions, but we do not so understand it, in any case where the same issue was presented for determination. The most recent case, and one almost exactly like this, is *Brug v. Herbst, supra.* Brug there occupied the position that the bank does here; that case was reversed by us because the trial court held Brug's mortgage void; this case is affirmed on the same point, because the trial court held the bank's mortgage to be good. Counsel further say that the plea there was one of payment, and not of alleged wrongful application of proceeds of mortgaged property. The opinion properly ignored the pleadings, because they were not questioned, but the only substantial issue there raised, briefed, argued and decided, was upon the same point that we are now discussing. The parties themselves chose the same theory in both cases, and the citations of previous decisions, and arguments of counsel are practically the same in both. If mere payment, in its ordinary sense, had been meant in *Brug v. Herbst,* the statement of facts, citations of authorities, and legal conclusions there would have been almost entirely beside the point, but they were all decidedly in point, and were stated, we believe, with such clarity that the opinion is not susceptible of misconstruction. We are going over the same ground now, at the

instance of The Glass and Bryant Mercantile Co., but if we held to its views, we would reverse our ruling in *Brug v. Herbst,* which we are disinclined to do, both on account of the rule of stare decisis, and because we are confirmed in our belief that the case was rightly decided. The only question here decided that was not involved in *Brug v. Herbst,* is that of marshaling assets, hereinafter discussed.

8. We granted a rehearing in this case solely upon the question of marshaling assets, which we shall now consider. After the execution of the Peyton and Epstein mortgages, and before this suit was brought or the bank garnished, and before the last sale on January 28, 1927, of some of Lebsock's farm machinery and other mortgaged chattels, the attorneys for Epstein and Peyton notified the bank to marshal assets, i. e., to look first to the beet money before resorting to the proceeds of the other chattels on which the sale was about to take place, and upon which chattels Epstein held a second mortgage and Peyton a third. The request should have been granted. The trial court did so order and we approve. It does not prevent the bank from getting full satisfaction for its claim, but it does prevent Glass from improperly participating in the sale of assets upon which he held no lien, to the detriment of those that did have liens, that is, Epstein and Peyton. Glass tied up the third and final beet check dated December 15, 1926, from the sugar company by asserting a claim thereto that we have held to be without foundation, and thereby postponed the rightful application of the money to the bank's mortgage. If it had been rightly applied at the time, it would have correspondingly relieved the burden on the other chattels mortgaged to (1) the bank, (2) Epstein and (3) Peyton, thus making the proceeds of the sale thereof available to the last two named mortgagees. The rule that equity considers that as done which should have been done, is applicable.

9. On rehearing, counsel for Glass remind us that before the suit was commenced, they gave notice to the bank

that they would require it to exhaust its other security before using the beet money on its mortgage. But Epstein and Peyton had no notice of the Glass secret lien until after the recording of their mortgages. And in this action Glass did not ask the trial court to apply the marshaling of assets doctrine in his favor. His entire case, from beginning to end, was based upon the erroneous theory that the bank's mortgage was void. The trial court rightly decided the matter upon the theory that Glass elected. It is too late to change and think of something else now.

10. The substance of the findings and decree, in its effect upon all of the parties, appears above in our statement of the case. The decision of the trial court was entirely right. The judgment is accordingly affirmed.

MR. JUSTICE DENISON concurs in part and dissents in part.

MR. JUSTICE DENISON, dissenting.

I cannot concur in the matter of the validity of the chattel mortgages. It seems to me that the decision overturns a rule settled by a line of authorities covering fifty years. *City Nat. Bank v. Goodrich*, 3 Colo. 139; *Wilcox v. Jackson*, 7 Colo. 521, 4 P. 966; *Wilson v. Voight*, 9 Colo. 614, 13 P. 726; *Brasher v. Christophe*, 10 Colo. 284, 15 P. 403; *Hall v. Johnson*, 21 Colo. 414, 42 P. 660; *Wellington v. Terry*, 38 Colo. 285, 88 P. 467; *First Nat. Bank of Ft. Collins v. Shafer*, 64 Colo. 388, 172 P. 1, L. R. A. 1918E, 636; *Harbison v. Tufts*, 1 Colo. App. 140, 143, 27 P. 1014; *Roberts v. Johnson*, 5 Colo. App. 406, 39 P. 596; *Wile v. Butler*, 4 Colo. App. 154, 34 P. 1110; *Edinger v. Grace*, 8 Colo. App. 21, 44 P. 855; *Lee v. Stanard*, 15 Colo. App. 101, 61 P. 234; *Estes v. First Nat. Bank*, 15 Colo. App. 526, 63 P. 788; *Wilson v. Jones*, 20 Colo. App. 317, 78 P. 622; *Dodge v. Norlin* (*C. C. A.*) 133 F. 363. Let any one interested read *Wilson v. Voight*, 9 Colo. 614, 13 P. 726.

It is said that *Brug v. Herbst,* 78 Colo. 128, 130, 239 Pac. 868, and *Bogdon v. Fort,* 75 Colo. 231, 235, 225 Pac. 247, have overruled the above cases. My understanding of those cases was and is that they refer only to mortgages on sugar beets and other crops, if any, disposed of in like manner and are based on the theory that mortgages on such are made subject to the custom under which such crops are marketed. This opinion seems to put mortgages on ordinary chattels under the same rule. If it is not intended so to do the opinion should be made clear, if it is so intended, I dissent.