**The EXCHANGE NATIONAL BANK OF COLORADO SPRINGS, Appellant,**

v.

**Raymond HOUGH, As Trustee, Appellee.**

**No. 5828.**

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1958.

Karl Ross and J. Hartley Murray, Colorado Springs, Colo. (Murray, Baker & Wendelken, Colorado Springs, Colo., on the brief), for appellant.

L. James Arthur, Denver, Colo. (Frederick P. Cranston, Denver, Colo., on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this bankruptcy proceeding the decision depends upon the validity, as against the appellee trustee, of a chattel mortgage given by the bankrupt, Atomic Research Corporation, to the appellant bank. The bankrupt was in business at Colorado Springs, Colorado, where it made and sold Geiger counters and other electronic devices for the detection of radiation. It borrowed $30,000 from the bank on the security of a chattel mortgage and certain stock assignments. Prior to the expiration of the mortgage term, the mortgagor filed a voluntary petition in bankruptcy in the United States District Court for the District of Colorado and was adjudged a bankrupt.

The bank filed with the Referee in Bankruptcy its proof of secured claim in the amount of $22,176.64. The trustee objected to the allowance of the claim and sought to have the purported lien of the chattel mortgage declared null and void. A hearing was held before the referee on issues relating to the validity of the mortgage, to the trustee's assertion of voidable preference, and to the amount of the bank's claim in the event it was determined to be an unsecured creditor. The referee held that the mortgage was void as to the trustee and that the trustee was entitled to the possession of the mortgaged property free from any claim of the bank. The referee deferred determination of the other issues. On petition for review the district court affirmed.

The mortgaged articles were electronic devices manufactured and then held for

sale by the bankrupt. The chattel mortgage described the property covered as follows:

"Radiation Detection Instruments All Carrying Atomic Research Corporation Identification and allied equipment described as follows: * * *."

The list which followed covered a total of 1452 items listed under 11 identifying designations.

The mortgage provided:

" * * * that it [the mortgagor] will not remove, sell, transfer, encumber, or in any manner dispose of the same or any part thereof, or attempt so to do, during the existence of the Lien created hereby without the written consent of the party of the second part [the mortgagee], its successors or assigns; * * *."

Under an oral agreement between the bank and the mortgagor, the property covered by the mortgage was segregated from the remainder of the stock in trade of the mortgagor and kept in a separate location under the control of the mortgagor with the understanding that none of the articles would be sold without the prior consent of the bank, and that the proceeds of all sales would be remitted to the bank and applied on the notes secured by the mortgage.

On two occasions, with the oral but not written consent of the bank, mortgaged articles were sold and less than the sale price credited on the notes. The first instance occurred on April 17, 1956, when out of a sale aggregating $6,722.80, $700 was applied to the payment of back rent owed by the mortgagor on the premises where it conducted its business and where the mortgaged property was stored. The balance of $6,022.80 was applied on the notes. The second instance was on September 21, 1956, when there was an accounting between the mortgagor and the bank for certain sales, the total amount of which is not disclosed by the record now before us. The proceeds of those sales were credited on the notes except for $154.79. This sum was made up of two items, one of $44.85 and the other of $109.94. The $44.85 item covered the expense of advertising material used in mail solicitation of sales of the mortgaged property. The item of $109.94 related to a claim of a purchaser of electronic equipment that the merchandise was defective and required the replacement of electric batteries.

The validity of the chattel mortgage is to be determined by the law of Colorado.[1] The trustee contends that the mortgage is void because of noncompliance with the 1951 Colorado Inventory Mortgage Act.[2]

Under the general chattel mortgage law of Colorado,[3] the courts were reluctant to permit the imposition of any effective lien on a stock of goods held by a dealer for sale or by a manufacturer for processing.[4] The 1951 act broadly validates a chattel mortgage on inventory. It attains this objective, and at the same time protects the rights of third parties, by requiring the filing of a statement containing a general description of the nature and type of property to be covered by a chattel mortgage. When such a statement is filed, a chattel mortgage, executed within one year thereafter and covering property within the general description appearing in the statement, need not be filed or recorded but the mortgagee, upon demand of a person falling within a class defined by the statute, is required to furnish information as to whether any personal property specified by the demanding person is subject to a

1. Etheridge v. Sperry, 139 U.S. 266, 276–277, 11 S.Ct. 565, 35 L.Ed. 171; Midwest Production Co. v. Doerner, 10 Cir., 70 F.2d 194, 195; Clark v. Huckaby, 8 Cir., 28 F.2d 154, 157, 67 A.L.R. 1456.

2. C.R.S.1953, §§ 20–2–1—20–2-12.

3. C.R.S.1953, §§ 20–1–1—20–1–20.

4. Storke and Sears, Colorado Security Law, p. 291; Hellerstein, Chattel Mortgages in Colorado, 5th Ed., p. 128.

chattel mortgage and the amount due thereon.

■ The instant case presents a situation wherein there is a chattel mortgage on personal property held for sale but no statement of the type required by the 1951 act has been filed. The trustee asserts that the failure to file such statement invalidates the mortgage. We do not agree. While the 1951 act is a later and a specific statute, it did not repeal the earlier general statute. This is shown by its § 20–2–12 which provides that existing chattel mortgage statutes are not applicable to mortgages taken under it. Also, the 1951 act does not in any way invalidate a mortgage on an inventory taken under the earlier law. While it is true that, as pointed out by Storke and Sears and by Hellerstein in their texts heretofore mentioned, there was confusion and uncertainty in the Colorado decisions under the earlier general law as to the validity of chattel mortgages on personal property held for sale, nevertheless, the 1951 act left parties free to proceed under the earlier law. But if they did, they were deprived of the advantages given by the later act.

We are aided by no Colorado decision construing or applying the 1951 act. There is no claim that the mortgage in question fails to comply with the earlier general chattel mortgage act in any way. There is no effort by the mortgagee to assert any right or advantage under the 1951 act. Under the circumstances the lack of the statement required by the 1951 act is entirely immaterial. The mortgagee has the greater burden of sustaining its mortgage under the severe limitations imposed by the Colorado decisions construing and applying the earlier act and the trustee has a corresponding advantage.

■ Under the Colorado decisions the "creditors and third persons" who are protected by the general chattel mortgage statute are not general creditors but only such creditors or persons as have acquired enforceable liens by execution or writ of attachment, or by contract, during the period of time that the mortgaged property remains in possession of the mortgagor.[5] The trustee comes within the protected class by virtue of § 70, sub. c of the Bankruptcy Act.[6] His rights attach as of the date of bankruptcy. Date of bankruptcy is defined as the date when the petition was filed.[7] In the case at bar the petition was filed on October 11, 1956. The chattels were then in possession of the mortgagor.

■ A determination of the applicable Colorado law is not free of difficulty. It has been held in Colorado that when a mortgagee gives to the mortgagor general authority to sell the mortgaged property for the mortgagor's own benefit or account, the lien is waived.[8] On the other hand if the mortgaged property is sold and the proceeds applied on the mortgage debt, the lien of the mortgage remains valid and enforceable.[9]

5. Brug v. Herbst, 78 Colo. 128, 130, 239 P. 868; Glass & Bryant Mercantile Co. v. Farmers' State Bank, 83 Colo. 193, 198, 265 P. 682, 684.

6. 11 U.S.C. § 110, sub. c.

7. 11 U.S.C. § 1(10).

8. The leading case and the one on which the trustee relies is Wile v. Butler, 4 Colo.App. 154, 155, 34 P. 1110, 1111. Other Colorado decisions announcing this rule are Arnold v. First National Bank of Cripple Creek, 96 Colo. 104, 107–108, 39 P.2d 791, 792, 97 A.L.R. 643; McMinn v. Harrison, 93 Colo. 5, 10, 23 P.2d 944, 945; Hall v. Johnson, 21 Colo. 414, 417, 42 P. 660, 661; Brasher v. Christophe, 10 Colo. 284, 296, 15 P. 403, 408; Wilcox v. Jackson, 7 Colo. 521, 524, 4 P. 966, 968; City National Bank v. Goodrich, 3 Colo. 139, 141.

9. The leading case is Wilson v. Voight, 9 Colo. 614, 618, 13 P. 726, 728. Other pertinent decisions are Arnold v. First National Bank of Cripple Creek, supra; J. I. Case Threshing Machine Co. v. Rominger, 77 Colo. 595, 596, 238 P. 63, 64; Wellington v. Terry, 38 Colo. 285, 288, 88 P. 467, 468.

In two Colorado Supreme Court de-cisions the application of these simple rules has been made dependent upon the time when the person contesting the validity of the mortgage acquired the right so to do. Brug v. Herbst, 78 Colo. 128, 239 P. 868, and Glass & Bryant Mercantile Co. v. Farmers' State Bank, 83 Colo. 193, 265 P. 682, each dealt with a chattel mortgage on sugar beets which were harvested and sold to a sugar com-pany which, in each case, issued three checks in payment with various time periods intervening between the issu-ance of each check. Parts of the pro-ceeds from the first two sugar company checks, with the knowledge and consent of the mortgagor and mortgagee, went to the mortgagor and to pay unsecured debts of the mortgagor with the re-mainder being applied on the mortgage debt. Also in each case the mortgagor, before the issuance of the third check, assigned it to another creditor. The as-signee urged that the mortgage lien was void because of the application of the proceeds from the first two checks to payments other than on the mortgage debt. In each case the court upheld the validity of the mortgage. The reason-ing was that until the assignment the assignee was a mere general creditor and not within the class protected by the statute. In the Glass & Bryant case the court said that until the assignment the mortgagee had a right to assume that no persons but general creditors were involved and accordingly could use the money to discharge any debt of the mortgagor and in any way that was mutually satisfactory to it and the mort-gagor. One judge dissented saying that the effect of the decision was to over-rule Wile v. Butler, supra; Wilson v. Voight, supra, and like cases.

The significance and effect of Brug v. Herbst and Glass & Bryant Mercantile Co. v. Farmers' State Bank have not been clarified by subsequent decisions of the Colorado Supreme Court. If these cases announce the rule that good faith application of the proceeds from the sale of mortgaged property for pur-poses other than payment of the mort-gage debt does not invalidate the mort-gage at the instance of a person who comes within the protected class after such application of the sale proceeds, then the mortgage lien now under con-sideration is good as the rights of the trustee accrued after the occurrence of the events upon which he relies to in-validate the mortgage. This is so be-cause in the present posture of the case there is no issue of voidable preference.

In its last decision touching on the subject, Arnold v. Bank, supra, the Colorado court made no reference to either Brug or Glass & Bryant and merely said that the lien is waived "where a mortgagee gives to the mort-gagor general authority to sell the mortgaged property for his own bene-fit or account * * *."[10]

If this rule applies, the trustee cannot prevail. In the instant case there was no general authority to sell. Specific authority had to be obtained for each sale. The sale proceeds which were not applied on the mortgage debt were used to pay operational expense of the mortgagor. Such payments bene-fited the security by providing a place for the storage of the property and for the conduct of the business of disposing of that property, by advising prospective purchasers of the availability of the property through modest advertising, and by replacing defective parts neces-sary to the consummation of sales. The mortgagor benefited only to the extent that as a result of the payments it might eventually realize out of the property something in excess of its lia-bilities. Not a dollar of the money was given to or retained by it. The possible indirect benefit resulting from enhance-ment in the value of the security is not the type of benefit which invalidates the mortgage lien. This was held in the long forgotten but never overruled de-cision in Lee v. Stanard, 15 Colo.App.

10. 96 Colo. 108, 39 P.2d 792.

101, 61 P. 234, where proceeds from sales of mortgaged property were used for operational expense in connection with preservation and disposition of that property. The court held that such use of the sale proceeds did not affect the validity of the mortgage, saying that the "purpose for which the sales were authorized, and the use to which their proceeds were to be applied, were not the purpose and use which the decisions have condemned."[11]

We conclude that under Colorado law the use in good faith of part of the sale proceeds for expenses necessary and proper for the preservation and disposition of the mortgaged property did not have the effect of voiding the lien of the mortgage.

The judgment is reversed and the case is remanded for further proceedings consistent with the views expressed herein.

11. 15 Colo.App. 109, 61 P. 237.