George H. ALLAN, individually and as District Director of Internal Revenue Service for the District of Colorado, Appellant,

v.

DIAMOND T MOTOR CAR COMPANY, an Illinois Corporation, Appellee.

No. 6577.

United States Court of Appeals
Tenth Circuit.

May 16, 1961.

Rehearing Denied June 7, 1961.

**116**

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C. (Abbott M. Sellers, Acting Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., and Donald G. Brotzman, U. S. Atty., Denver, Colo., on the brief), for appellant.

Robert D. Inman, Denver, Colo. (Fred M. Winner, Denver, Colo., on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The issue is whether an unrecorded purchase money chattel mortgage takes precedence over a federal tax lien. The trial court held for the mortgagee and the District Director of the Internal Revenue Service appeals.

Gamble Equipment Company (Gamble) owed federal corporate income tax in the amount of $15,215.76 for 1951. After appropriate extensions by agreement, assessment of the tax was made on October 12, 1955. On December 10, 1955, Gamble entered into a conditional sales agreement with appellee-plaintiff Diamond T Motor Car Company (Diamond T) covering a stock of merchandise consisting of automotive parts located in Adams County, Colorado, to secure the payment of the cost of that stock. The purchase money obligation was in the amount of $60,000 and was payable in installments, the last of which fell due in 1958. The conditional sales agreement was promptly recorded in Denver County but was not recorded in Adams County until March 11, 1957. On February 20, 1957, notice of the federal tax lien was filed in Adams County and on March 5, 1957, the property was seized under a distraint warrant and was sold on April 12, 1957, for $7,500. Diamond T sued to recover and was awarded judgment for the sale price.

The applicable federal statute, 26 U.S.C. § 6323 (1958 ed.) provides that a federal tax lien such as that here asserted "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed" in the office designated by the law of the state wherein the property is located for such filing. State law controls the determination of whether the taxpayer has property or property rights to which the federal tax lien can attach and federal law determines the priority of competing liens asserted against such property.[1] The United States Supreme Court has repeatedly applied the perfected lien standard in cases involving liens under state law in competition with federal tax liens.[2] In United States v. R. F. Ball Construction Company, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed. 510, this standard

1. Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365.

2. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. White Bear Brewing Company, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; United States v. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23; and United States v. Hulley, 358 U.S. 66, 79 S.Ct. 117, 3 L.Ed.2d 106.

was applied to contractual liens and, following the Ball Construction Company decision, we applied the perfected lien standard to a contractual lien in United States v. Chapman, 10 Cir., 281 F.2d 862, 869. Federal law determines the perfection of the lien.[3]

■■ The first question is whether, under Colorado law, the taxpayer had any property or property rights in the stock of merchandise to which the federal lien could attach. Colorado treats a conditional sales agreement as a chattel mortgage for recording purposes.[4] A mortgage recorded in the wrong county has no more effect than an unrecorded mortgage.[5] Such a mortgage is good as between the parties irrespective of recording[6] and only need be recorded as required by Colo.Rev.Stat. § 20–1–1 (1953) to be effective against creditors and third persons having liens enforceable by execution, attachment, or contract acquired during the time when the mortgaged property remained in possession of the mortgagor.[7] Colorado has further held that a purchase money mortgage has preference over other claims or liens through the mortgagor even though prior in time.[8]

■ The trial court was impressed by the fact that in Colorado the unrecorded mortgage was good between the parties and preceded the filing of notice of the tax lien. That point is not controlling. In the Ball Construction Company case the Texas assignment, there treated as a mortgage, was good between the parties as was pointed out in the dissenting opinion but the Supreme Court gave priority to the tax lien. The Chapman case, the decision of which was made after the disposition of the instant case in the lower court, dealt with an assignment which was argued to be a purchase good so far as the parties were concerned, and we upheld the tax lien. A secret agreement between private parties as to the title to personal property is not enough to defeat the enforceability of a federal tax lien.

The property involved here was a stock of merchandise. The agreement gave Gamble the right to sell and required the use of such of the sale proceeds as was necessary to replace articles sold. Such replacements were to be subject to the agreement.[9]

■ In Exchange National Bank v. Hough, 10 Cir., 258 F.2d 785, 788–789, we reviewed the Colorado decisions relative to the effect of chattel mortgages wherein the mortgagor had the right to sell the mortgaged property and held that when a mortgagee gives to a mortgagor general authority to sell the mortgaged property for the mortgagor's own benefit or account, the lien is waived whereas if the mortgaged property is sold and the proceeds applied on the mortgage debt, the lien of the mortgage remains valid and enforceable. In the instant case we are aided by no evidence as to sales of mortgaged property or disposition of sales proceeds. It is apparent from the face of the instrument that the mortgagor had the right to retain for his own benefit so much of the sales proceeds as were in excess of replacement cost. As we pointed out in the Exchange

3. United States v. Scovil, supra, 348 U.S. at page 220, 75 S.Ct. at page 246.

4. Illinois Building Co. v. Patterson, 91 Colo. 391, 15 P.2d 699.

5. Stitt v. Spengel House Furnishing Co., 58 Colo. 559, 146 P. 770.

6. McClain v. Saranac Machine Company, 94 Colo. 145, 28 P.2d 1009.

7. Brug v. Herbst, 78 Colo. 128, 239 P. 868; Glass & Bryant Mercantile Co. v. Farmers State Bank, 83 Colo. 193, 265 P. 682.

8. Robinson v. Wright, 90 Colo. 417, 9 P.2d 618.

9. The pertinent provision of the conditional sale agreement read: "The vendee herein [Gamble] is hereby authorized to sell for value any and all of the property herein listed in this conditional sale agreement. The vendee, however, is to use the proceeds of the said sale or so much thereof as is necessary to replace the articles so sold. The articles purchased to replace the articles so sold shall be subject to all the terms and conditions of this conditional sale the same as if said articles were the original articles set forth in this conditional sale."

National Bank case the reluctance of the Colorado courts to permit the imposition of an effective lien on a stock of goods held by a dealer for sale resulted in the passage of the Colorado Inventory Mortgage Act.[10] In the instant case there was no effort made to comply with that law. In the circumstances, the authorization of sale with the right to retain part of the proceeds for the mortgagor's benefit is a waiver of the lien of the mortgage so far as those protected by the statute are concerned.

■ The stock of merchandise which was distrained and sold was not among the assets of the taxpayer at the time of the tax assessment but was acquired later by means of the purchase money mortgage transaction. There is a question of fairness in subjecting property so obtained to the antecedent tax lien and it may be argued forcibly that the interest retained by the mortgagee removes the property from a status which would subject it to the tax lien. The difficulty is that the mortgagee placed the property in the possession of the mortgagor with the right to sell in the ordinary course of business and to retain at least a portion of the proceeds. As Diamond T conferred upon Gamble "the usual evidences and indicia of ownership" [11] for the very purpose of enabling Gamble to deal with the property as its own, it may not now complain that the seizure under the distraint divested the mortgagor of property which it did not own.[12] Storke and Sears in their authoritative text, Colorado Security Law, § 24, pp. 89–90, say: "An execution creditor is treated as a purchaser when there is a levy on property in the possession of the judgment debtor, to whom the true owner has given the 'indicia of ownership.'" At the time of the distraint seizure the position of the government was that of an execution creditor and, hence, the same as that of a purchaser. To say that a purchaser in such circumstances may be divested of ownership by an unrecorded purchase money mortgage is to disregard the realities of every day business life. We hold that under Colorado law Gamble had rights to the property in question which made that property subject to distraint.

The next question is the relative priority of the mortgage lien and the tax lien at the time of the seizure. This must be determined under the perfected lien rule, and there was no perfected lien because the mortgage was not recorded in the proper county at the time of the seizure under the distraint. To deny priority to the tax lien would be to subordinate that lien to a secret and unperfected contractual lien, the purchase money mortgage. The purpose of § 6323 is to protect the lienors there mentioned from a secret federal tax lien, not to subject a federal tax lien to a secret private lien.

■ A further contention of Diamond T is that the government had notice of the conditional sales agreement. This is predicated on the theory that in October, 1955, the government knew the financial position of Gamble was such that it could not acquire additional property with its own resources. The Colorado statute, § 20–1–5, provides in part that one who obtains an interest in personal property "with actual notice" that the same is mortgaged acquires no right to that property in preference to the mortgage even though the mortgage is not recorded. Knowledge of financial embarrassment is not "actual notice" of a mortgage. While the trial court made no finding on the question of notice, a review of the record convinces us that Diamond T did not sustain the burden of establishing such notice.

Reversed with directions to enter judgment for the defendant.

---

10. Colo.Rev.Stat. §§ 20–2–1 to 20–2–12 (1953).

11. Schraeder v. Mitchell, 73 Colo. 320, 323, 215 P. 147.

12. In Schraeder v. Mitchell, supra, an execution was made on cattle not owned by the judgment debtor and the seizure was upheld on the ground that the true owner had supplied the judgment debtor with the usual signs of ownership so that he could deal with the property as his own.