WEST v. THE HANSON PRODUCE COMPANY.

1. CORPORATIONS—PREFERENCE OF CREDITOR.
A corporation, although insolvent, may dispose of its property or transfer it to a *bona fide* creditor in payment of its debts, and thereby prefer its creditor.

2. GARNISHMENT.
Unless the debtor has funds in the hands of the garnishee or some demand which he could enforce against him, the creditor can take nothing by the process of garnishment.

*Appeal from the District Court of La Plata County.*

Messrs. RUSSELL & RITTER, for appellant.

Messrs. MILLER & REESE, for appellee.

REED, P. J., delivered the opinion of the court.

The Hanson Produce Company brought suit by attachment against The Durango Meat & Produce Company. Judgment by default was taken. In the attachment proceedings appellant was garnished and answered each interrogatory in the negative. The answer was traversed by the plaintiff and trial had to the court, without a jury, on the following agreed statement of facts.

" *First.* That The Durango Meat & Produce Company, on and prior to the 5th day of July, 1893, was a corporation, existing under the laws of the state of Colorado, and the same as to the plaintiff, The Hanson Produce Company. That on and prior to the 5th day of July, 1893, The Durango

Meat & Produce Company was carrying on a business in the town of Durango, and that on the 5th day of July it was in an insolvent condition. That prior to July 5, 1893, Frank Wingate, Robert Ambold and Lisle Wainwright were directors, or trustees rather, of the said corporation, and that Lisle Wainwright was president, Frank Wingate was secretary, and Robert A. Ambold was general manager of the business. That prior to July 5, Frank Wingate, Lisle Wainwright and Robert Ambold had signed and given to the First National Bank of Durango two promissory notes, amounting to $5,500. That the money was borrowed by the company and these parties became security for it, but the bank would not take the company's paper, and these three parties named gave their notes direct to the bank for the payment of the said money. When these notes became due in the bank, The Durango Meat & Produce Company was unable to pay them and they turned what stock of goods they had on hand, fixtures, tools used in their business, and book accounts, over to John Harper, Lisle Wainwright and Robert Ambold, as security to pay the amount due on those two notes in the bank. These three parties, in a day or two afterwards, by and with the consent of all parties except the plaintiff in this action, turned the same over to George West, the garnishee in this action, under contract and understanding that he was to proceed to sell the goods and pay the money in, direct to the bank, and have it credited on these notes, and he did sell the goods and turn the money in and had it credited on the notes; and George West had possession of the goods and accounts at and before the garnishment in this action was served upon him, and afterwards continued to sell as theretofore and apply the proceeds on the notes; that the value of the property and accounts was sufficient to pay the amount of plaintiff's judgment and costs in this action, but would not be sufficient to pay the said two notes given to the bank; that John Harper mentioned herein, acted as agent of Frank Wingate. At the time the transfer was made Messrs. Wainwright, Wingate, Ambold and West all knew that the

company was insolvent. At the time of this transfer and previous thereto and from thence hitherto, The Durango Meat & Produce Company was indebted to The Hanson Produce Company in the sum of $376.90; that The Hanson Produce Company has recovered judgment in this case against The Durango Meat & Produce Company for the sum of $376.90 and costs. That this transfer included all the personal property of every kind and description owned by The Durango Meat & Produce Company. That, at the time that that company made this transfer to Harper, Wainwright and Ambold, it was carrying on business in the city of Durango, La Plata county, Colorado."

Upon which the court made the following finding and caused judgment to be entered:

"And it being shown to the court that The Hanson Produce Company is plaintiff in attachment against The Durango Meat & Produce Company, and that the said George E. West was garnisheed to secure the claim of the said The Hanson Produce Company against the said The Durango Meat & Produce Company; and that judgment was heretofore rendered in favor of the said The Hanson Produce Company against the said The Durango Meat & Produce Company for the sum of $376.90, and costs, amounting to $7.77½, and the court further finding the facts to be as stated in said stipulation, it is whereupon ordered, adjudged and decreed that the said transfer of personal property by the said The Durango Meat & Produce Company to the said George E. West be held fraudulent and void to the said The Hanson Produce Company. And the said The Durango Meat & Produce Company, for the use of the said The Hanson Produce Company, do have and recover of the said George E. West, garnishee, the sum of $376.90, and the costs of said garnishment proceedings to be taxed at $7.77½, and hereof let execution issue. To which finding and order and judgment of the court the said garnishee then and there excepts and prays an appeal to the court of appeals of the state of Colorado, which appeal is granted by the court and appeal

bond fixed in the sum of $650, to be given within thirty days and to be approved by the clerk of this court, and sixty days given for presentation of bill of exceptions, they having been first presented to counsel for plaintiff."

From which an appeal was prosecuted to this court.

The facts being conceded and fully stated, the questions presented are purely legal. The errors assigned, and under the circumstances all that could be assigned, although six in number, may be consolidated into one,—that the court erred in applying the law to the facts, and in consequence the judgment was erroneous.

It having been conceded and agreed that the two promissory notes executed by the officers of the Meat & Produce Company, Wingate, Ambold and Wainwright, were given for a corporate debt, and that the money was borrowed by the corporation and that the individuals named " became security for it," the case is very much simplified. The only questions to be determined are, *first*, whether, under the facts as stated, the company could legally turn over the entire assets in payment of the bank debt to the exclusion of other creditors; *second*, the relation appellant West bore to the respective parties. For upon the determination of the latter question depends the correctness of his answer as garnishee.

I. Counsel for appellee ably contends that the assets of a corporation are a trust fund in the hands of the corporation for the payment of its debts when the corporation is insolvent, and many authorities are cited in support of it. There is no question in regard to the correctness of the legal proposition. The only question is what it means. Although aggregate and made up of many individuals, it materially simplifies its legal status by regarding it for all business purposes as a *person*, subject to the same laws and disabilities, while the officers as trustees manage its affairs, supposedly, for the benefit of its stockholders. If solvent, the interest of stockholders is the surplus remaining after payment of the corporate debts. What is meant by the principle, although enunciated in many different shapes, is that primarily the

assets are to be devoted to the payment of its debts, and until such debts are paid neither the assets nor funds of a corporation can be distributed in dividends or otherwise for the benefit of stockholders. In other words, the property of shareholders is the balance remaining after the debts are paid. It is the same with an individual in business. His property is primarily liable for the payment of his debts; and with the corporation, as with the person, the law will not permit the property to be diverted and dissipated while the debts are unpaid.

It is conceded that the corporation was insolvent at the time of the transfer of its assets to appellant. Although such was the fact, it was continuing in business, administering its own affairs, in the possession of its property. The property was not "*in custodia legis.*" Such being the fact, its right to dispose of the property or transfer it to a *bona fide* creditor in payment of its debts has been clearly established in this state by the decisions of both the supreme court and this court so frequently that a citation of the cases is unnecessary; and the same has been declared to be the law in all states where, as in this, there is no statute restricting the right. It is legally a matter of no importance whether it is the disposition of a part or all of the assets, whether for the benefit of all *pro rata*, or discriminating against all save the creditor favored and preferred.

The debt being honest and the transfer being made in good faith for the payment, without collusion and with no secret trust for the benefit of the grantors, the transaction is valid. It is stipulated that the entire property transferred to appellant was insufficient to pay the bank. Consequently, the question of a resulting trust for the benefit of the grantors is not involved.

After having stipulated " that the money was borrowed by the company and these parties became security for it," counsel for appellee, in argument, fall into error by regarding the debt as that of the indorsers or sureties. They say, " But we fail to find in appellant's brief authorities sustaining prefer-

ences made by directors of an insolvent corporation in favor of themselves." Again, "Any attempt on the part of the directors of an insolvent corporation to prefer themselves is a fraud upon the creditors." This mistaken theory of the case is ably argued at length, and authorities are cited supposed to favor the contention, but the question is not involved. The fact that they were sureties for the payment of the debt and made the note,—and although the payment of the note would relieve them of their liability and may have prompted them to prefer the bank,—the debt remained the debt of the corporation and did not become that of the individual officers. The great weight of modern authority is to the effect that, as individuals, the officers of a corporation can loan it money, or legally, in any other proper way, become its creditors and deal with it in the same manner as with an outsider. If such is the law,—and it seems to be where there is no statutory prohibition,—it logically follows that the right to become a creditor carries with it all the rights of a creditor, and authorizes the corporation to prefer the officer if it sees fit.

II. The assets of the debtor being personal property, to be converted into money to pay the bank debt, appellant was selected as trustee to take the property and the title to it, convert it into money and pay the proceeds to the bank. It was a trust for a specific purpose. The only duty he owed the assignor was to realize all he could by the sale and pay it to the bank; the duty he owed the bank was to account for and pay the money by him received; and, it being conceded that the property was insufficient to discharge the debt, consequently that there would be no surplus or balance to be returned to the assignor, he was fully justified and legally right in his answers to the interrogatories in the process of garnishment.

It is a well settled law that unless the debtor has funds in the hands of the garnishee or some demand he could enforce against him, the creditor cannot succeed by a process of garnishment. The creditor can only be subrogated to the rights

of the debtor, and if he has nothing the creditor takes nothing. In this case it will readily be seen that the debtor had nothing in the hands of appellant.

It is evident that the court misconceived the law controlling the case, and held the assignment void. Otherwise there could have been no judgment.

The judgment must be reversed and cause remanded.

*Reversed.*