## No. 12,805.

### McMinn v. Harrison et al.
(23 P. [2d] 944)

Decided May 29, 1933. Rehearing denied June 19, 1933.

6

Mr. E. CLIFFORD HEALD, for plaintiff in error.

Messrs. GABRIEL, MILLS & MILLS, Mr. FREDERICK P. CRANSTON, for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE plaintiff in error, Laura A. McMinn, claiming under a defective chattel mortgage, sued to recover damages from the defendant in error Mark Harrison, common-law assignee for the benefit of the mortgagors' creditors, one of whom was the defendant in error the Davis Brothers Drug Company, which was an intervener below. Judgment went against her and she brings the case here for review.

On February 15, 1929, one McAtee and his wife made Harrison their assignee by an instrument which, in form an irrevocable power of attorney, was obviously intended to operate as an assignment for the benefit of all their creditors equally and without preference. An instrument executed with such an intention, at least when possession is taken thereunder, constitutes a common-law assignment for the benefit of creditors. 5 C. J. 1118, §§141, 142. It is expressly conceded by all parties, both here and in the court below, that the transaction constituted such an assignment. This is a proper application

of the principle laid down in *Damaskus v. McCarty-Johnson Co.*, 88 Colo. 279, 295 Pac. 490. Without knowledge of any lien or claim of preference on the part of anybody, Harrison went into actual possession of the assignors' property. This included the fixtures and stock in trade of the McAtees at their drug store in Brighton, Colorado. Some at least of the creditors assented to the arrangement; in fact, Harrison testifies that he took the assignment with the consent of all the creditors.

The assignment was not made in accordance with the Colorado statute on general assignments (C. L. '21, sections 6241 et seq.). It is admittedly only a common-law assignment, as already stated, and, but for the contentions of the plaintiff in error, Laura A. McMinn, it would doubtless have proceeded as such. However, after Harrison had taken over the McAtee property under the contract of assignment resulting in the pledge of that property for the specific purpose of selling it and distributing the proceeds ratably and without preference among all the creditors of the assignors, Mrs. McMinn set up a claim under an instrument called a "lease of drug store equipment and stock," signed by her and the two McAtees on September 16, 1926, when she gave them possession. The drug store and the fixtures involved were the same ones that came to the hands of Harrison as assignee, but of course the stock of goods necessarily underwent a substantial, if not complete, change in the period between the execution of the "lease" and the execution of the assignment instrument, a matter of nearly two and a half years.

The self-styled "lease" is as follows:

"This is to certify that we [the McAtees] have this day leased of Laura A. McMinn * * * the following described furniture, fixtures and equipment * * * in the store room on Bridge Street in the Wire Building at Brighton * * * together with all drug stock and other goods, wares and merchandise therein located [duly de-

8

scribed] * * * all * * * valued at the sum of $6800, subject to the following conditions, to wit: (1) $2300 to be paid by me to Laura A. McMinn at the time of execution of this lease, the receipt * * * acknowledged * * *; and * * * $100 to be paid on the 1st day of each calendar month thereafter for 45 months, with interest * * *; (2) and should I fail to make any of the above payments * * * I hereby agree to surrender and return said furniture, fixtures and equipment, together with all goods, wares and merchandise then on hand and in said business at the time of such failure, to * * * McMinn, in as good condition as when received, customary wear and tear excepted, and *excepting also the substituted goods, wares and merchandise as herein provided;* and I further agree that said furniture, fixtures and equipment and goods, wares and merchandise in said business shall not be removed from the premises above described and known as the 'Gem Pharmacy' for any use or purpose whatever, *except that I shall have the right to sell the said goods, wares and merchandise in said store in the usual course of trade,* and for such articles sold I shall replace them in stock from time to time as they are sold, so that the said goods, wares and merchandise in said store shall at all times be substantially the same as at the date of this lease; and I further agree that in the event that I shall permit the same to become of less value than now, I hereby agree to surrender and return said furniture, fixtures and equipment, together with the stock then on hand to the said * * * McMinn.

"No agreement of sale of said goods, wares or merchandise, or of furniture, fixtures or equipment shall be implied, except the sale of such goods, wares and merchandise as shall be sold in the usual course of trade and as hereinabove stated nor shall a sale or purchase of it be deemed valid, save for the last mentioned exception, without a written receipt from the said * * * McMinn therefor; and that I shall become the owner of the above described furniture, fixtures and equipment, goods,

wares and merchandise when the same shall be fully paid for as above provided. * * *''

█ The above ''lease,'' signed but not acknowledged, was recorded. All the parties concede—and the lower court found—that the document was to all intents and purposes a chattel mortgage. It was therefore valid and enforceable between Mrs. McMinn and the McAtees. C. L. '21, page 1393, section 5085. Owing to noncompliance with the provisions of the chattel mortgage act, Id., pages 1392, 1393, sections 5083, 5084, recording added no strength to the weakness of the instrument, and no one was thereby charged with constructive notice of its nature or its contents. It is not contended that Harrison had any actual notice of it until after he took possession as assignee for the benefit of the creditors.

The vital question then becomes: Can this assignee, under the general assignment, claim such an interest as will hold the assigned property free from any lien of this ''lease''?

█ Had Mrs. McMinn taken possession under the instrument, she would thereby perhaps have cured any ordinary defect or irregularity in it, and a subsequent assignment to Harrison would have availed nothing against her. Now, it may be conceded for the purposes of this case that merely receiving a common-law assignment could not ipso facto confer upon Harrison any lien or right then superior to Mrs. McMinn's; that, at the moment such assignment was made, Harrison's interest was probably measured exactly by that of his assignors, and he then and there simply stood ''in his assignors' shoes.'' But when Harrison, with the assent of any of the creditors, assumed physical possession of the McAtee property under the assignment, there arose in his favor as assignee, and in favor of the assenting creditors and all other creditors as the real parties in interest, such a right or lien as brings the case clearly within the protection of C. L. '21, section 5083, where a mortgage of chattels is declared invalid as ''against the rights and

interests of any third person or persons unless possession of such property be delivered to and remain with the mortgagee, or the mortgage be acknowledged and certified, and filed or recorded as provided in this act." For that reason Harrison's claim is superior to Mrs. McMinn's. Whether such a result followed immediately when the assent of one or more creditors was given and before possession was taken, we need not now decide.

There is another reason why the judgment against Mrs. McMinn must be affirmed. From the second italicized passage in the quoted portion of the "lease" it is clear that this chattel mortgage permitted the McAtees to sell the mortgaged stock of goods, wares and merchandise in the usual course of trade. Mrs. McMinn herself testified that she consented to the McAtees diverting the proceeds of the sales "for their own living." The case thus falls squarely within the principle we have repeatedly laid down whereby such chattel mortgages are declared void as against "creditors and third persons," in which category Harrison was entitled to be placed at least after his taking possession. *Glass & Bryant Mercantile Co. v. Bank,* 83 Colo. 193, 265 Pac. 682, and cases cited. The logic of these cases is emphasized by the situation here, where a contrary holding would inflict a total loss upon the very creditors who have sold the goods, wares and merchandise replenishing the stock as it was being depleted in the course of years.

Still a third reason for affirmance exists under the first of the italicized passages in the above "lease." This exception of subsequently substituted stock, if it means anything, withdraws—from whatever actual or potential lien might have been given by the execution of the "lease"—any and all merchandise since bought by the McAtees. Therefore, aside from all other grounds of discussion, the burden of showing what if anything of the original stock still remained when Harrison came

upon the scene would rest on Mrs. McMinn. She did not sustain that burden.

What has been said necessarily upholds the possession taken by Harrison as assignee. It of course does not deprive Mrs. McMinn of her standing as a creditor of the McAtees to the extent of any bona fide balance that may be owing her on the original indebtedness after crediting the sums paid by the McAtees and the $300 received by her from Harrison, being the sum at which he sold the fixtures. For this balance she has a right, if she desires, to share pro rata with the other creditors in whatever remains after the assignee has made payment of the expenses he has necessarily incurred in handling and disposing of the assigned estate, including a reasonable trustee's fee for himself, reasonable attorneys' fees, taxes (if any) and any other expenditure authorized by the instrument of assignment. The findings below as to the correctness of Harrison's accounting for receipts and expenditures are supported by the evidence. However, since the district court undertook to order that Harrison pay Mrs. McMinn nothing out of the balance in his hands, the judgment must be modified; that is, the judgment is affirmed in so far as it is for the defendants in error on the money demand of the plaintiff in error, and also as to the approval of the aforesaid receipts and expenditures, but that portion of the judgment which orders the proceeds of the assignment to be distributed only among the creditors other than the plaintiff in error is reversed. The case is remanded with instructions to enter judgment in harmony with this opinion, after giving the plaintiff in error an opportunity of electing whether she will prorate with the other creditors.

Judgment affirmed in part and reversed in part. Case remanded with instructions.

MR. JUSTICE BUTLER, MR. JUSTICE MOORE and MR. JUSTICE HILLIARD dissent.

Mr. Justice Butler, dissenting.

For reasons stated in this opinion, the judgment, it seems to me, should be reversed.

Laura A. McMinn sued Mark Harrison, claiming that she, as mortgagee, has a lien upon certain money, the proceeds of a sale by him of mortgaged property. The Davis Brothers Drug Company, a general creditor of R. H. and Helen A. McAtee and assignee of the claims of other general creditors, intervened and contested Mrs. McMinn's claim. The trial court rendered judgment in favor of Harrison and the drug company and against Mrs. McMinn.

Mrs. McMinn sold a drug store to the McAtees. Part of the purchase price was paid in cash, and the payment of the balance was secured by an instrument which was admitted by all parties and held by the trial court to be a chattel mortgage, and which shall be referred to as such. The mortgage was not acknowledged. It covered the stock of merchandise and the fixtures, and permitted the McAtees to remain in possession and to sell the merchandise in the usual course of trade. With the consent of Mrs. McMinn, the McAtees carried on business in the usual way. Part of the money received from the sales of the merchandise was used to replenish the stock, part was paid on account of the mortgage debt, and part was used by the McAtees to pay their living expenses. In such circumstances the mortgage is valid between the parties, but void as to innocent purchasers or encumbrancers for value, if there are any such. While the mortgage was still in force the McAtees executed an instrument referred to in the majority opinion as a general assignment to Mark Harrison for the benefit of the creditors of the McAtees. Harrison took possession. Creditors, including Mrs. McMinn, filed their claims with him. Harrison sold the property and distributed part of the proceeds among the creditors; but he refused to recognize the validity of Mrs. McMinn's mortgage lien, except as to the fixtures, which he delivered to her. She sold

the fixtures for $300 and credited that amount on her claim, leaving a balance of $1,421.25 due her. Harrison refused to recognize her mortgage lien on the stock of merchandise, and the trial court held with him.

It is contended that Harrison is an assignee for the benefit of creditors; that as such he is in the position of a bona fide creditor for value, and that, because of the infirmities noted above, the mortgage, though valid between the parties, was void as to Harrison. That contention is unsound.

1. First, consider the case on the supposition that the instrument is a general assignment for the benefit of creditors. Where such an assignment is made in compliance with the assignment statute (C. L. §6242), title to the assigned property, by virtue of the express terms of the statute, vests in the assignee "in trust for the use and benefit of such creditors." If the instrument involved herein were a statutory assignment for the benefit of creditors, the mortgage would be void as against the assignee and the creditors represented by him. *Clark v. Bright,* 30 Colo. 199, 69 Pac. 506. But in the present case the statute was not complied with. That would not render the assignment void. It would be valid as a common-law assignment for the benefit of creditors, and would be controlled by the law applicable to such assignments. *Damaskus v. McCarty-Johnson Co.,* 88 Colo. 279, 295 Pac. 490. By the great weight of authority, an assignee in a common-law assignment for the benefit of creditors does not represent the creditors, but only the debtor. He is not in the position of a bona fide purchaser for value. He stands in the shoes of the debtor, and takes only the interest that the debtor had at the time of the assignment. He succeeds only to such title as the debtor had, and takes no higher or better rights. Whatever claim to the property may be asserted against the debtor may also be asserted against the assignee. *Wells v. Schuster-Hax Nat. Bank,* 23 Colo. 534, 48 Pac. 809; *Taub v. McClelland-Colt Commission Co.,* 10 Colo. App. 190, 51

Pac. 168; 2 R. C. L. p. 656, et seq.; 5 C. J. p. 1188, et seq.; 11 C. J. p. 577.

The difference between the status of an assignee in a statutory assignment for the benefit of creditors and that of an assignee in a common-law assignment for the benefit of creditors is based upon a substantial reason. A debtor who makes a statutory assignment is released from all liability to his creditors, though the proceeds realized from the sale of the property assigned may be but a small percentage of the assignor's debts; but in case of a common-law assignment the property is sold and the proceeds are paid pro rata to the creditors, and credited upon the indebtedness, and the assignor continues liable for the balance remaining unpaid. In the former case the assignee stands in the position of an innocent purchaser for value; in the latter he does not.

At the time of the execution of the instrument the McAtees owned the property encumbered by the mortgage. That encumbered interest, and that interest only, could pass to Harrison by a common-law assignment. Assuming that the instrument in question is a common-law assignment, the mortgage, being enforceable against the McAtees, is enforceable against Harrison.

2. The Davis Brothers Drug Company and those who assigned their claims to it are mere creditors. They are in no better position to question the validity of the mortgage than an assignee for the benefit of creditors would be. General creditors are not "creditors or third persons," within the meaning of the Chattel Mortgage Act (C. L. c. 107). *Glass & Bryant Mercantile Co. v. Farmers State Bank,* 83 Colo. 193, 265 Pac. 682; *Bogdon v. Fort,* 75 Colo. 231, 225 Pac. 247; *Brug v. Herbst,* 78 Colo. 128, 239 Pac. 868; *Morse v. Morrison,* 16 Colo. App. 449, 66 Pac. 169.

3. The fact that Mrs. McMinn filed a claim with Harrison did not constitute a waiver of her mortgage lien or of her preference by virtue thereof, or an estoppel to claim her mortgage preference. *Peterson v. Bergman*

*Cabinet Mfg. Co.*, 145 Wash. 664, 261 Pac. 381; note, 55 A. L. R. 993. Nor did the fact that she did not for over one year insist upon her mortgage preference constitute a waiver thereof or estop her from asserting her preference.

4. Thus far this opinion has proceeded on the theory that the assumption in the majority opinion that the instrument in question is in effect a general assignment for the benefit of creditors is sound. But that assumption, it is respectfully submitted, is erroneous.

In his petition for a rehearing, counsel for Mrs. McMinn says: "In so holding the majority of the Court has overlooked the express provisions of the instrument under which Harrison took possession, which provides: 'Ray H. McAtee and Helen A. McAtee * * * hereby irrevocably appoint Mark Harrison our true and lawful attorney, for us and in our name, place and stead, to take possession of * * * all goods, wares and merchandise * * * and to convert into cash either by public or private sale, * * * and to apportion the proceeds ratably among all our creditors * * *.' The holding of the majority of the Court is directly contrary to the Court's holding in Kinney v. Mercantile Co., 76 Colo. 136, where this Court said of a similar instrument: 'Boulter, a grocer, became insolvent and gave Kinney a power of attorney to * * * sell all his property and distribute the proceeds, pro rata, among his creditors. * * * The plaintiff in error (Kinney) then was a mere agent with authority to sell and his possession and acts were the possession and acts of his principal, Boulter.' * * * The conclusion is inescapable that the Court has either overlooked or misapprehended the form, language and effect of the instrument involved in the case at bar, or else have overlooked or intends to overrule Kinney v. Mercantile Co., supra. If the latter is intended we submit that the Court should so state, so that the profession will be advised that they may no longer rely on the authority of that case."

It seems to me that counsel's point is well taken. The instrument is not an assignment for the benefit of creditors or for any other purpose, but is a mere power of attorney. It does not assign the property or purport to transfer or convey the title to Harrison. Title did not pass to him. Harrison is not an assignee in any sense of the word, but an agent of the McAtees, with power to act for them and in their names. His possession is the possession of the McAtees; his acts are their acts. *Kinney v. Yoelin Brothers Mercantile Co.,* 76 Colo. 136, 230 Pac. 127. The mortgage, being enforceable against the McAtees, necessarily is enforceable against their agent, Harrison.

5. Counsel for Harrison and the drug company contend that there was a compromise agreement whereby Mrs. McMinn was to have the fixtures and waive her claim as to the rest of the property covered by the mortgage, and that she received the fixtures under that agreement. Where a doubtful or disputed claim to property is asserted in good faith, it is sufficient to support a compromise agreement. *Holy Cross Gold Mining & Milling Co. v. Goodwin,* 74 Colo. 532, 223 Pac. 58; 5 R. C. L. p. 881. As to whether there was such an agreement, the evidence was in conflict. The court found "that at all times after said assignment all the parties hereto expressly recognized that the plaintiff [Mrs. McMinn] was the owner of the fixtures therein mentioned." As Harrison and the drug company, according to the finding of the court, made no claim to the fixtures, and her right thereto was not disputed, there was no basis for a compromise. The agreement, if made, was without consideration and was void. 5 R. C. L. pp. 881, 882.

The judgment should be reversed.

Mr. Justice Moore and Mr. Justice Hilliard concur in this opinion.