## No. 13,473.

### McMULLIN v. KEOGH-DOYLE MEAT COMPANY.
(42 P. [2d] 463)

Decided March 4, 1935.

Mr. BENTLEY M. McMULLIN, plaintiff in error, pro se.

Mr. Wilbur F. Denious, Mr. Hudson Moore, Mr. Dayton Denious, Mr. Earl W. Wilson, for defendant in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

The facts out of which the controversy involved in this action arose were substantially as follows: One J. C. Sims was in the grocery business in the City and County of Denver and becoming seriously involved financially made, executed and delivered to the plaintiff in error McMullin an instrument in writing, the material part of which is as follows:

"Witnesseth, That the debtor, for and in consideration of the premises, does hereby bargain, sell, deliver, assign, and set over unto said trustee all the stock of merchandise and fixtures of the said debtor now located in the store known as number 4590 Tennyson Street, in the City and County of Denver in the State of Colorado, in trust for the benefit of the creditors of the said debtor. And it is hereby agreed and declared that the said trustee shall stand possessed of the premises hereby conveyed and covenanted to be surrendered, respectively, upon trust, in such manner as he shall think fit to call in, collect, compel payment of, and receive such parts thereof as are outstanding, and to sell and convert into money such parts thereof as do not consist of money; and shall stand possessed of the net proceeds of sale, and of all other moneys which shall come to his hands under or by virtue of these presents upon trust; in the first place to pay and retain thereout all costs, charges, and expenses of, or incidental to, the negotiation, preparation, and execution of these presents, and of or to the carrying of the same into effect, including a reasonable fee for the services of said trustee; and in the next place to pay all claims which are by law entitled to be paid in full in priority to other debts in case of bankruptcy, and to pay, divide, and distribute the

residue of the said moneys ratably unto and among the said creditors in discharge of their said debts by such installments and at such times as the trustee shall think fit, and to pay the surplus, if any, to the said debtor.

"And for the considerations aforesaid the debtor hereby appoints the said trustee to be his attorney, with full power and authority in his name and in his behalf to execute and sign any deed or document which the said trustee may think necessary or expedient for carrying into effect the trusts and purposes of these presents.

"And I hereby for myself, my heirs, executors, and administrators, do ratify and confirm whatsoever my said attorney shall do by virtue of these presents.

"In Witness Whereof, I have hereunto set my hand and seal this 18th day of March, A. D. 1933.

"J. C. Sims (Seal)"

McMullin immediately went into possession of the property described in that instrument, and March 28, ten days after the execution of the instrument, sent a notice to the creditors of Sims, setting forth that Sims was in an insolvent condition, setting forth in round figures the value of the property assigned to him and the amount of the taxes and other indebtedness, which notice was signed, "Bentley M. McMullin, Assignee." Thereafter the claims of twenty-six creditors aggregating $1,260.48, were filed with McMullin, among them the claim of the defendant in error, the Keogh-Doyle Meat Company, in the sum of $145.06. It appears from the abstract of record that the claim of the Keogh-Doyle Meat Company was filed March 29. After taking possession of the property, McMullin advertised in the Denver Post and showed the property to a representative of the Keogh-Doyle Meat Company, who looked at the same with a view to the company purchasing the fixtures. Later, April 11, McMullin sold the fixtures to Mrs. Pearl Asmus for $250, signing the bill of sale, "J. C. Sims and A. M. Sims by Bentley McMullin." A. M. Sims was the wife of J. C. Sims. Mrs. Asmus was furnished a list of the creditors

of J. C. Sims and sent out letters in an attempted compliance with the Bulk Sales Law (C. L. 1921, §§3756-3758).

It further appears from the abstract that the Keogh-Doyle Meat Company was dissatisfied with the sale of fixtures and after learning of the sale to Mrs. Asmus, offered a slightly higher price than $250, which McMullin refused. On May 5th of the same year, the Keogh-Doyle Meat Company brought suit against Sims in the justice court and procured a judgment against him for $145.06.

All of the twenty-six claims that were filed with Mc-Mullin, with the exception of that of the Morey Mercantile Company, and one for $8.73 filed on July 31st, and possibly two others aggregating $9.81, the dates of which do not appear, were filed prior to May 5th, the date that the Keogh-Doyle Meat Company started its suit. After procuring the judgment in the justice court the company on July 15th served a garnishment on Mrs. Asmus, who answered in the negative all of the interrogatories propounded to her on garnishment. On October 11, 1933, garnishment was served on McMullin, who likewise answered all of the interrogatories in the negative. The company traversed this answer and on trial in the justice court, the justice rendered judgment against McMullin, which he appealed to the county court, which likewise rendered judgment against him and in favor of the company. He brings the case here for review.

The controversy between the parties grows out of the difference in construction that they place upon the written instrument herein set out, and the rights and obligations of the parties under said instrument. In order to determine this controversy, it will be necessary to determine whether the instrument is merely a power of attorney or whether, under the circumstances of the case, it constitutes a common-law assignment, and if it does constitute a common-law assignment what are the rights and obligations of the parties thereunder.

It was held by this court in the case of *Damaskus v. McCarty-Johnson Co.*, 88 Colo. 279, 295 Pac. 490,

that the common-law right to make an assignment for the benefit of creditors is not abrogated by our statutory enactments relative to such assignments. Not all of the debtor's property was included in the assignment made in this case, now under consideration, and the assignment contained a provision for the payment of an attorney's fee for services connected with, but antedating the time that the assignment became effective; it also provided for the payment "in full in priority to other debts in case of bankruptcy." The rule is thus stated in 2 R. C. L., p. 670, §28: "At common law a debtor may legally make an assignment of a part of his property for the benefit of his creditors." And he may prefer one creditor over another. "It is a settled rule that in the absence of statutes forbidding preferences, every debtor has a right to prefer one or more of his creditors to the rest, and he may do this in an assignment for the benefit of creditors as freely as in any other way." 2 R. C. L., p. 690, §44. See also *West v. Hanson Produce Co.*, 6 Colo. App. 467, 41 Pac. 829.

It was contended by defendant in error that the instrument provides for the application of only a part of the debtor's property to the payment of his debts, that such payment is to constitute a discharge of the debt in full, and that the same is therefore void. We do not believe that a proper construction of the instrument gives it this effect. By its language it instructs the trustee to "distribute the residue of the said moneys ratably unto and among the said creditors in discharge of their said debts by such installments and at such times as the trustee shall think fit." We think the fairer construction of the instrument to be that the moneys paid by the trustee as a result of this assignment are to discharge the debts only pro tanto and not in full. According to the greater weight of the authorities, if it is made a condition that the distribution of proceeds from the sale of a part of a debtor's property be accepted in full payment by creditors, the instrument is void. We think that the instrument

should be given a construction, as against the maker, that will leave it valid rather than void, it being susceptible of two constructions, and we shall so construe it.

In the case of *McMinn v. Harrison*, 93 Colo. 5, 23 P. (2d) 944, we held that an instrument which on its face was clearly in form nothing but a power of attorney constituted, where possession of the property was taken under it, in fact a common-law assignment for the benefit of creditors. It was pointed out in a dissenting opinion in that case that the holding of the court in effect overruled the case of *Kinney v. Yoelin Bros. Merc. Co.*, 76 Colo. 136, 230 Pac. 127. Some of the statements contained in the latter case are inconsistent with the rule laid down in McMinn v. Harrison, but it will be observed that the real ground on which the case of Kinney v. Mercantile Company was decided, was that, regardless of what may have been the effect of the power of attorney, the garnishing creditor in that case, having received one of the checks and having held it, could not assume "an equivocal position in attempting to disaffirm the action of Kinney under the power." The court further said, "If it disaffirms the action it must not retain any rights under that power. Holding the check which might be sued on or cashed any day was a retention of such a right." The case was decided on this ground. It will thus be seen that it was unnecessary for the court in the Yoelin case to determine whether or not the instrument was equivalent to an assignment for the benefit of creditors, and whether or not the sale of fixtures was void as against creditors without compliance with the requirements of the Bulk Sales Law. The announcement of this court that an instrument in form a power of attorney, where possession is taken under it, may be considered as a common-law assignment, in the case of *McMinn v. Harrison, supra,* may be considered the first expression of the court on that question. It was not necessary that this matter be determined in order to arrive at the decision in *Kinney v. Mercantile Company, supra,* and the

observations therein made on this question are merely obiter dicta.

In view of the fact that the law looks with favor upon the settling of differences existing between debtors and creditors without the interposition of courts, it is proper that we state the principle of law applied in determining the character and effect of the instrument involved in *McMinn v. Harrison, supra,* and to be applied in determining the character and effect of the instrument involved in this case. In construing such instruments courts look to the surrounding circumstances, and the acts of the parties, as well as to the form of the instrument. If the instrument involved herein has the effect of a common-law assignment, whether apt words of conveyance and creation of the trust be used or not, then the court will find the instrument to be what its construction by the parties and its effect show it to be, rather than to be what its form alone might indicate. In the light of the foregoing statement of the law to be applied, we have no doubt that the instrument here involved, so construed, was executed for the purpose of authorizing McMullin, as trustee for Sims, to dispose of the property and prorate the proceeds among his creditors in pro tanto satisfaction of their claims, after paying certain preferred claims which were set out in the instrument. This is the function of a common-law assignment.

Among other things, defendants in error say that giving a bill of sale to Mrs. Asmus signed by Sims by McMullin as his attorney, is a clear indication that the parties did not intend the instrument to operate as a common-law assignment. As would follow from what we have already indicated to be the principles governing transactions of this character, we should not consider the means that were employed as controlling, but should look to the result. The sending out of notices under the Bulk Sales Act was done by Mrs. Asmus, no doubt out of an abundance of caution, but she being a stranger to the transaction between Sims, McMullin, and the creditors

of Sims, the parties in interest, could not by any construction she might put upon the transaction change it with respect to the parties directly involved.

■ Having determined that the instrument and the acts of the parties thereunder clearly constitute the transaction a common-law assignment, there remains to be considered the effect of that transaction with respect to the claims of creditors and the claim of the Keogh-Doyle Meat Company in particular. Under the decisions of this court and under the general law with respect to common-law assignments, there is no question but what the assignee is merely the agent of the assignor, and that in the absence of any act on the part of the creditor which makes it inequitable for him to take a position that the acts of the assignee are but the acts of the assignor by agent, he may assert any rights or pursue any remedies he may have against the assignor or his property just as though such assignment had not been made.

■ ■ As indicated above the parties in interest in such a transaction are the debtor, the creditors and the trustee or grantee in the power of attorney. In the instant case, if the creditor, the Keogh-Doyle Meat Company, had done nothing in recognition of the act of the debtor in giving the trustee certain powers over the property involved, but had wholly disregarded it and pursued his remedy against Sims in court, there would be no question of its right to pursue the specific property, or if that property had been sold, it could ratify the sale and pursue the fund in the hands of the trustee derived from such sale. As to creditors entirely disregarding it, the instrument executed by the debtor and accepted by the trustee or agent, and all that the agent might have done under the power conferred thereby would have been merely in the nature of an offer to such creditors to participate in the proposed division of the property on the terms and conditions set forth in the instrument, which they might accept or reject at will, but in this case the creditor did something more. Its representative went with the trus-

tee to look at the property with a view to buying it. It made an offer for the property after it had been sold to Mrs. Asmus. It filed written proof of its claim with the trustee. Having done these things, the other twenty-five creditors, who had filed their claims and had accepted the offer, were entitled to rely upon the acts of the Keogh-Doyle Meat Company; and the trustees, and debtor, also parties in interest, were entitled to rely upon the acts of the company as an acceptance of the offer contained in the instrument. Having done this, as pointed out by Mr. Justice Denison in the case of *Kinney v. Yoelin Bros. Mercantile Company, supra,* it could not thereafter assume an equivocal position in attempting to disaffirm the action of the trustee under the power, and thus obtain an advantage over its co-creditors similarly situated. If it subsequently became dissatisfied with the trusteeship or with the method of its administration, it should then have proceeded in equity in order that the rights of other similarly situated creditors would be equally protected; or in bankruptcy, where the estate would be administered for the benefit of the creditors as a whole.

We think logically it follows by analogy to the principle of offer and acceptance in the law of contracts that the debtor, after acceptance by his creditors, could not revoke his action and repossess himself of the property, and if the debtor could not repossess himself of the property or the proceeds thereof as against the trustee, after acceptance of the trust by the creditors, it is likewise logical to conclude that the trustee has no property of the debtor in his hands that he is bound to turn over to him, and no proceeds of the sale of property in his hands that would create the relationship of debtor and creditor between the trustee and the debtor; therefore neither the property in his hands nor the funds received therefrom could be reached by proceedings in garnishment. *West v. Hanson Produce Co., supra.* Such also is the holding, in effect, in *James v. McPhee,* 9 Colo. 486, 13 Pac. 535. The last paragraph of the syllabus in that

case correctly states the holding of the court in these words: "In an action by an assignee under an assignment for the benefit of creditors for goods sold and delivered after the assignment, the defendant cannot plead an indebtedness of the assignor as a set-off."

To hold otherwise with respect to one creditor who had filed his claim, and say, as the trial court did, that funds in the hands of the trustee could be reached by garnishment, if he ratified the sale of the property and elected to pursue his remedy against the proceeds, would necessitate also holding that another creditor who had filed his claim might elect to disaffirm the sale by the trustee and pursue the property in the hands of the purchaser, who, if he had not complied with the provisions of the Bulk Sales Law, supra, would be in the position of losing the money paid to the trustee, and of losing the property that he had purchased, and creditors thus would be paid twice out of their debtor's property. In the light of modern business practice and considering the desirability of the settling of differences existing between debtors and creditors without resort to the courts whenever possible, we do not think that a construction of this instrument and of the acts of the parties thereunder should be such as to make that situation possible. If it be held that this transaction was a common-law assignment, then the sale of the property is valid as to a creditor who impliedly accepted it by filing his claim, and by his other acts, without compliance with the Bulk Sales Law. *Damaskus v. McCarty-Johnson Company, supra.*

The judgment is reversed and the cause remanded with instructions to the trial court to set aside its judgment and enter judgment for the plaintiff in error for costs.

Mr. Justice Campbell concurs.

Mr. Chief Justice Butler, concurring.

I believe that this decision follows the rule announced in *McMinn v. Harrison,* 93 Colo. 5, 23 P. (2d) 944, and

for that reason I concur. I have always felt that the Mc-Minn case overruled, in effect, *Kinney v. Yoelin Bros. Merc. Co.*, 76 Colo. 136, 230 Pac. 127, but it announces, nevertheless, the present law in this state.